13788

ELLIOTT *ET AL.* v. CARROLL *ET AL.*

(173 S. E., 908)

Before MANN, J., Dorchester, May, 1933.

*Mr. Francis F. Carroll,* for appellants,

*Messrs. Legare Walker, Jr.,* and *Benet, Shand & Mc-Gowan,* for respondents,

February 21, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Some time during the year 1919, Francis F. Carroll executed his bond and mortgage to the Bank of Dorchester for the sum of $2,700.00, which bond was to become due February 1, 1920. The 1st day of December, 1931, the Bank of Dorchester assigned the bond and mortgage to Peoples State Bank of South Carolina. About August 5, 1922, Francis F. Carroll conveyed the mortgaged premises to J. Waties Waring in trust for Frances Eloise Carroll and Julia Reynolds Carroll (the children of Francis F. Carroll), in fee-simple absolute. Peoples State Bank became insolvent and closed its doors December 31, 1931. The plaintiffs are the duly appointed receivers thereof, and bring this action to foreclose the Carroll mortgage. His daughters and J. Waties Waring are made parties because they have, or claim, some interest in the mortgaged premises.

For answer Francis F. Carroll set up, first, the conveyance of the premises to J. Waties Waring, as trustee for Frances Eloise and Julia Reynolds Carroll, who now own the property; second, that in January, 1919, he was appointed by the Probate Court the general guardian of his daughter Julia, who is a minor; that as such guardian he

received certain moneys of his ward, and on December 31, 1931, had the sum of $1,169.29 of her money on deposit in the savings department of Peoples State Bank of South Carolina; that the bank knew that this defendant was obligated to take care of the funds of his ward, and that a default by the bank to return this money to him would render him personally liable to his ward for such loss, nevertheless, the bank permitted itself to become insolvent, and refused, and refuses, to pay the defendant the amount of said deposit with interest; that the bank personally agreed with him to return this money on demand and had violated its contract; that he is entitled to a set-off against the note and mortgage to the amount of such deposit; that his ward owns a half interest in the mortgaged premises, and any reduction in the mortgage debt will redound to her benefit.

Frances Eloise Carroll answered, denying knowledge or information of certain allegations of the complaint, that by reason of the deed of Francis F. Carroll to J. Waties Waring as trustee, she owns an interest of one-half in fee simple in the mortgaged premises; that, when the Peoples State Bank closed its doors, she had in one of its branch banks the sum of $503.00 as a deposit in the savings department. She claims the right to offset said deposit, *pro tanto,* against the mortgage debt.

J. Waties Waring answered that his trust is a passive one, and he has no interest in, title to, or possession of, the mortgaged premises in trust or otherwise.

Plaintiffs demurred to the answer of Francis F. Carroll, for that it appeared on the face thereof that the offset claimed is a deposit of money belonging entirely to the ward of the defendant Francis F. Carroll; that such funds are not within his unlimited control, nor can they be subjected to the individual debts or obligations of this defendant; that there is no mutuality between the debt due by the defendant Francis F. Carroll, individually, and the debt due by plaintiffs to him, as guardian; that the personal responsi-

bility of the guardian to his ward, alleged in the amended answer, is a mere conclusion without proper allegations of fact to support it.

They demurred to the answer of Frances Eloise Carroll, for that it appears on the face of it that the complaint alleges no debt due by her to plaintiffs, nor is any judgment or affirmative relief demanded of her; hence the matter of offset does not arise; that it appears by the pleadings that whatever interest this defendant has in the mortgaged premises, herein involved, is subject to the lien of plaintiff's mortgage, which fact is not controverted by the answer; therefore the offset or counterclaim, which she alleges, cannot be set up in this action for foreclosure.

The demurrers were considered by his Honor, Judge Mann, who sustained them in a short order in which he assigned no grounds for his decision. The appeal is from that order.

Francis F. Carroll bases his appeal upon grounds stated in four exceptions. The first of these alleges error for sustaining the first ground of demurrer and in holding that the offset claimed by defendant was the property entirely of his ward, Julia Reynolds Carroll, and was held by him as guardian, was not within his unlimited control, nor subject to the payment of his individual debts; whereas he should have held that defendants' claim of offset was for damages for breach of contract by the bank for failing to pay him on demand the amount of said deposit.

A reference to the allegations of the second paragraph of the second defense interposed by this defendant disposes of this exception: "*Second:* That this defendant after his appointment as such General Guardian, received certain sums of money belonging to the estate of his ward, Julia Reynolds Carroll, and from the moneys so received by him for his said ward he had on the 31st day of December, 1931, the sum of One Thousand One Hundred and Sixty-nine Dollars and Twenty-nine cents on deposit in the savings

department of Peoples State Bank of South Carolina, the said deposit being payable and demandable at its branch bank located at 544 King Street in the City of Charleston, S. C., which deposit said Peoples State Bank of South Carolina, a corporation duly organized under the laws of the State of South Carolina and doing a general banking business, agreed personally with this defendant to take good care of, and to pay and return and to hold itself at all times able and in readiness to pay and return same to this defendant, *the General Guardian of said Julia Reynolds Carroll,* at any time that he might demand same or any part thereof."

It is difficult to comprehend how defendant can offset an unliquidated demand for damages for the failure to pay to defendant his ward's money, without some showing in fact that the failure to do so would make him personally liable to the ward.

And this brings us to consider here the third exception, which alleges error for sustaining the third ground of the demurrer, to wit: That the personal responsibility of the guardian to his ward, alleged in the complaint, is a mere conclusion not sustained by proper allegations of fact. Under certain conditions, the guardian would unquestionably be responsible for losses of bank deposits belonging to his ward, and other conditions might arise where no responsibility would exist. For instance, if the guardian made his bank deposit without complying with the provisions of Section 9050 of the Code, which requires the approval of the Probate Judge, he would be personally liable for the loss; whereas, with such approval, he would be held blameless. See *Oakes' Estate v. Oakes,* 170 S. C., 167, 169 S. E., 890.

But, even though there should exist a personal liability of the guardian to his ward based upon his failure to obtain the approval of the Probate Judge as to this bank deposit, of which there is no allegation, we do not see how this fact can aid the guardian in his contention that he is entitled to an offset against his personal debt to the bank of the amount

which he himself is due his ward. If he had complied with the statute, no personal liability would have existed, and hence no basis for an offset. Surely he cannot be rewarded with an offset for failing to comply with the statute.

If he deposit the funds in his own name and loss occurs, he is generally held responsible to the ward. In the case here present the funds are shown by the answer of Francis F. Carroll to have been known to the bank as the funds of the ward. No presumption of his responsibility to his ward arose by the mere failure of the bank, and no facts are alleged in his answer to show that such responsibility would attach to him individually. This likewise disposes of the fourth exception. There was no error in sustaining this ground of the demurrer.

The serious issue is made by the remaining exception of Francis F. Carroll. Appellant seems to seek to differentiate the claim he makes for the payment to him of the deposit fund as a payment to him individually for breach of contract to repay to him the deposit fund on demand, from a claim for payment in his representative capacity as guardian. The only fund he deposited was that of his ward; it was deposited to his credit as guardian; and he has shown no facts which *ipso facto* by the failure of the bank would entail liability on him. If he can offset this fund against the bank's debt against him, it must be because of some right accruing to him in his representative capacity.

The modern trend is toward more liberality in the application of the rule of offset. Some states have enacted statutes on the subject, and some Courts have construed existing rules in a broader spirit of abstract justice and equity. A review of such of these decisions as are within reach discloses that the old established rule of offset is relaxed *only* where some statute applies or where some special equity or responsibility requires it. For instance, where a fiduciary seeks to offset the debt which he owes with the debt owed by his creditor to the fiduciary's *cestui que* trust, it will be

allowed only when it is made to appear that the fiduciary is individually responsible to the *cestui que* trust.

In the case of *Coburn v. Carstarphen,* 194 N. C., 368, 139 S. E., 596, 597, 55 A. L. R., 819, it appears that the defendant, as county treasurer of Martin County, had on deposit in an insolvent bank which closed its doors certain funds of the county, and that he was indebted to the bank individually. He sought the application of the rule of set-off.

The Supreme Court, quoting from *Dameron v. Carpenter,* 190 N. C.; 595, 130 S. E., 328, said: "A set-off is in the nature of a payment or credit when the debts are mutual. * * * Set-off exists in mutual debts, independent of the statute of set-off. Its flexible character is used in equity to prevent injustice."

The Court said further: "In the instant case, although the deposit in the sum of $2,801.91 was made by defendant with moneys belonging to Martin county and stands on the books of the bank in his name as treasurer, he is personally liable to the county for the moneys received by him as treasurer. He is solvent, and must account to the county for the amount of the deposit. *As between the bank and the defendant, the bank is liable primarily to the defendant, and not to the county.* * * * *"*

The Court continues thus: "In *Funk v. Young, Trustee,* 138 Ark., 38, 210 S. W., 143, 5 A. L. R., 79, it was held that the maker of a note to a bank, which thereafter became insolvent, may offset his indebtedness to the bank upon said note, by a deposit in his name as trustee, *where he was personally liable to his cestui que trust for the amount of the deposit."* (Italics added.)

The case of *People v. California Safe Deposit Company,* 168 Cal., 241, 141 P., 1181, L. R. A., 1915-A, 299, is cited.

A number of cases are cited in the annotation to the case of *Funk v. Young, Trustee,* in 5 A. L. R., 79, but all of

them seem to rest upon the proposition that the depositor was personally liable to the *cestui que* trust, *and the deposit was not earmarked as the property of the cestui que trust.*

In the case of *Hanson v. Bank of Lagrange,* 39 Ga. App., 380, 147 S. E., 124, the syllabus is in these words: "Where a person deposits in a bank money which does not belong to him, but which in fact he holds in a fiduciary capacity for another, and the deposit is made in his own name with a mere *descriptio personae* following it, as a deposit by C. W. Hanson, pastor First Christian Church, Lagrange, Georgia,' the depositor may, after the bank has afterwards become insolvent and is in process of liquidation, set off the fund so deposited against his own pre-existing personal obligation due by him to the bank."

In the discussion of the case the Court said: "The bank, without any knowledge of the fiduciary character of the fund, would have been protected, as against the beneficiary, in accepting the fund from the depositor in payment of the depositor's debt to the bank. This is supported in principle by *Ruan v. Gunn,* 77 Ga., 53. *The bank, however, even with the consent of the trustee who deposited the money, could not, as against the right of the true owner or beneficiary, appropriate the fund, with knowledge of its fiduciary character, to the payment of the pre-existing debt of the depositor. American Trust Company v. Boone,* 102 Ga., 202, 29 S. E., 182, 40 L. R. A., 250, 66 Am. St. Rep., 167." (Italics added.)

A decision handed down by the United States Supreme Court November 23, 1933 (290 U. S., 143, 54 S. Ct., 113, 114, 78 L. Ed.—), in the case of *Dakin v. Bayly,* holds that: "The conclusion is that, while the Clearwater bank individually owed the receiver of the St. Petersburg bank, the latter did not owe the former, but at best the claim was made as an agent. If this be true, set-off may not be allowed, for a defendant sued upon his individual debt may not avail himself for this purpose of a demand against the plaintiff

held in a fiduciary capacity." Citing *Central Nat. Bank v. Connecticut Mutual Life Insurance Co.,* 104 U. S., 54, 26 L. Ed., 693; *Libby v. Hopkins,* 104 U. S., 303, 26 L. Ed., 769; *Western Tie & Timber Co. v. Brown,* 196 U. S., 502, 25 S. Ct., 339, 49 L. Ed., 571; *United States v. Butterwith-Judson Corp.,* 267 U. S., 387, 45 S. Ct., 338, 69 L. Ed., 672; *Thomas v. Potter Title & Trust Co.* (D. C.), 2 F. Supp., 12."

This late utterance of the highest Court in the land is convincing that the old rule of offset holds good in spite of modern relaxations in the application of it.

It is not difficult to discern the line of distinction between the cases above discussed and the case now before this Court.

The pleadings do not show that this appellant has become individually liable to his ward by the failure of the bank. It does appear that the bank had full knowledge of the fiduciary character of the deposit; it is patent that, if the bank had, before its insolvency, applied the deposit to an individual debt owed to it by appellant, it would have been liable to the ward for such misapplication. With what degree of consistency, then, can it be argued that the appellant may compel the receivers of the bank to apply the deposit to his individual debt?

It seems clear that this case falls directly within the long-established rule governing offset, to wit: "In the absence of statutory provisions to the contrary, and subject to exceptions hereinafter to be considered, it is a broad general rule of practically universal application that to warrant a set-off the demands must be mutual and subsisting between the same parties, and, furthermore, *must be due in the same capacity or right, and there must be mutuality as to the quality of the right.*" (Italics added.) 57 C. J., 444, 445.

"To be mutual the cross-demand here set up must be shown to belong individually to the defendant with corresponding right to sue for the same in his individual name."

*Hunter v. Henning,* 259 Pa., 347, 103 A., 61, 62; Note A, 57 C. J., 445.

"It is held as a general rule that in equity, as at law, the right of set-off is reciprocal, and only mutual claims and such as are in the same right can be set off.". 57 C. J., 446, § 96.

"Agreement between a trustee and the bank, which had a deposit of his individual funds and the funds of his beneficiaries, that a claim of the trustee as such be set off against a claim against him in his individual capacity would be unlawful, in the absence of consent by the *cestuis que trustent."* *Sanford v. Pike,* 87 Or., 614, 170 P., 729, 171 P., 394.

The case of *Smith v. Bath Loan & Bldg. Ass'n,* decided by the Supreme Judicial Court of Maine, reported in 126 Me., 59, 136 A., 284, 288, 50 A. L. R., 526, holds as follows: "It is well settled that the equitable right of set-off is not dependent upon the express provisions of statute, but is derived from the rules of the civil law, and founded upon principles of natural equity and justice (*Crummett v. Littlefield,* 98 Me., 317, 56 A., 1053), *but it is equally well settled that the general rule in equity, as well as at law, is that demands, to be set off, must be mutual, and that debts accruing in different rights cannot be set off against each other* [Italics added]"—citing *Rodick v. Pineo,* 120 Me., 160, 113 A., 45; *Merrill v. Cape Ann Granite Co.,* 161 Mass., 212, 36 N. E., 797, 23 L. R. A., 313.

The case at bar is controlled by this well-established rule of equity, and it is manifest that Francis F. Carroll cannot offset the deposit funds in the bank in his name as guardian of Julia Reynolds Carroll against his individual debt to the bank.

The defendant Francis F. Carroll is the general guardian of Julia Reynolds Carroll, and appears for her as guardian *ad litem* in this action. He seeks to set off against his personal debt to the bank the funds of his ward. His interests and hers are antagonistic. If the set-off claimed be allowed,

the bank will still be liable to the ward. Her guardian *ad litem* has interposed for her a merely formal answer. Under the authority of the case of *Simpson v. Doggett,* 159 S. C., 294, 156 S. E., 771, she could hold the bank liable to her for the funds thus misapplied.

The exceptions of Frances Eloise Carroll are two ■ in number, and stand upon the proposition that, because she is a half owner of the mortgaged premises, and therefore interested in reducing the mortgage debt, she is entitled to offset against the mortgage debt of Francis F. Carroll to the bank the deposit of $503.00 which she, Frances Eloise Carroll, had in the bank when it failed.

The interest of this appellant in the mortgaged premises arose by the conveyance to her and her sister after the lien of the mortgage had attached to the property. They took it subject to the lien of the mortgage, and their equity lies in the excess of the value of the land over the mortgage debt. There is no mutuality of debts between the bank and this appellant, and hence there can be no set-off.

The exceptions in her behalf are without merit.

To allow the offsets claimed by these appellants would be to give them a preference over other simple depositors, which would run counter to the canon of the law laid down in *Livingstain v. Banking Co.,* 77 S. C., 310, 57 S. E., 182, 184, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568, to wit: "No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

The exceptions in behalf of both appellants are overruled, and the order appealed from is affirmed.

MR. JUSTICE STABLER concurs.

MR. CHIEF JUSTICE BLEASE did not participate.

MR. JUSTICE CARTER (dissenting) : Being unable to agree with the conclusion reached in the leading opinion of the Court in this case, I am forced to dissent, and shall, in a brief way, state my reasons therefor.

The facts in the case pertinent to the questions involved are as follows:

In the year 1919 Francis F. Carroll executed and delivered unto the Bank of Dorchester his certain bond, conditioned for the payment, February 1, 1920, of the sum of $2,700.00, and at the same time, in order to secure the payment of said obligation, executed and delivered unto the said bank a real estate mortgage in the usual form, covering real estate of the said Francis F. Carroll, located in the Town of Summerville, said County of Dorchester; that thereafter August 5, 1922, the said mortgagor, Francis F. Carroll, conveyed the mortgaged premises to J. Waties Waring, in trust for Frances Eloise Carroll and Julia Reynolds Carroll (children of the said Francis F. Carroll), in fee-simple absolute. On December 1, 1931, the Bank of Dorchester assigned the said bond and mortgage to the Peoples State Bank of South Carolina, which bank became insolvent and closed its doors December 31, 1931, and William Elliott and Robert Gage were duly appointed receivers thereof. As receivers of the said Peoples State Bank, the said William Elliott and Robert Gage commenced this action in May, 1933, for the foreclosure of said mortgage, making parties defendant thereto the said Francis F. Carroll, Frances Eloise Carroll, Julia Reynolds Carroll, an infant, and J. Waties Waring. The plaintiffs, in their allegations contained in the said complaint, allege that there is due upon the said bond and mortgage the sum of $1,800.00, with interest thereon at the rate of 7 per cent. per annum from the 1st day of August, 1930, and 10 per cent. upon the aggregate amount as attorneys' fees. It is also alleged in the said complaint that there is a certain amount of taxes due against the property. The complaint contains the usual allegations in foreclosure suits, and plaintiffs ask that the mortgage be foreclosed, the equity of redemption barred, the mortgaged real estate be ordered sold, and the proceeds derived from said sale, after deducting the costs and expenses of the ac-

tion and the sale and taxes, etc., be applied on the said alleged indebtedness, and the balance, if any, paid to the defendants as their rights may appear. The plaintiffs, in the prayer of the said complaint, also ask "for such other and further relief as may be just and to the Court shall seem meet and proper."

Answers were filed on behalf of each of the defendants. In the answer of the defendant Francis F. Carroll, filed in *propria persona,* while admitting the execution of the bond and mortgage in question and the subsequent assignment of the same to the Peoples State Bank of South Carolina, and also the conveyance of the mortgaged premises to J. Waties Waring in trust for Frances Eloise Carroll and Julia Reynolds Carroll, he alleged additional credits to those set up in the complaint and denied the correctness of the method of computing the interest set forth in the complaint and the amount owing on the obligation.

This defendant Francis F. Carroll, for a second defense, by way of set-off and counterclaim, made the following additional allegations, which we quote in full in order that the questions involved may be clearly understood:

"First: That on the .... day of January, 1919, the defendant, Francis F. Carroll, was appointed by the Probate Court of Charleston County in said State General Guardian for his daughter, Julia Reynolds Carroll, who was then and is still a minor, and at the time of his appointment as such General Guardian, as a condition and qualification for his appointment as such General Guardian, entered into all of the obligations and took upon himself all of the duties required by law in the cases of appointment of General Guardian, among which is the obligation to take good care of all money and other personal property belonging to the estate of his ward that might come into his possession and pay the same to his ward or to the use and benefit of the ward, as might be lawfully required from time to time.

"Second: That this defendant after his appointment as such General Guardian, received certain sums of money belonging to the estate of his ward, Julia Reynolds Carroll, and from the moneys so received by him for his said ward he had on the 31st day of December, 1931, the sum of One Thousand One Hundred and Sixty-nine Dollars and Twenty-nine cents on deposit in the savings department of Peoples State Bank of South Carolina, the said deposit being payable and demandable at its branch bank located at 544 King Street in the City of Charleston, S. C., which deposit said Peoples State Bank of South Carolina, a corporation duly organized under the laws of the State of South Carolina and doing a general banking business, agreed personally with this defendant to take care of, and to pay and return and to hold itself at all times able and in readiness to pay and return same to this defendant, the General Guardian of said Julia Reynolds Carroll, at any time that he might demand the same or any part thereof.

"Third: That although said Peoples State Bank of South Carolina knew that this defendant was personally under all of the obligations provided by law for carefully taking care of all moneys received for his said ward and to pay same to her or to her benefit as lawful occasion might require and that any defalcation on its part in the payment or return of the said deposit would work personal injury and damage to him for the reason that he would have to make good to his said ward the amount of any deficit out of his own personal estate or belongings, nevertheless allowed itself to become hopelessly insolvent and said deposit account to become utterly valueless and worthless, and on the 31st day of December, 1931, closed its doors, ceased business and placed itself in the hands of the South Carolina State Bank Examiner, has failed in its contract personally with this defendant to hold itself able and in readiness at all times to return and pay the amount of said deposit to this defendant, the General Guardian for said Julia Reynolds Carroll, and

has failed to pay to this defendant said amount after demand or any part thereof, and has caused this defendant to become personally indebted to his said ward, Julia Reynolds Carroll, in the sum of Eleven Hundred and Sixty-nine Dollars and Twenty-nine cents, the amount of said deposit so lost with interest thereon from the 31st day of December, 1931, at the rate of seven per centum per annum.

"Fourth: This defendant further alleges that he is solvent, that his said ward will become of age on the 29th day of September, 1933, that his said ward owns in fee simple absolute a one-half undivided interest in the premises covered by the mortgage sought to be foreclosed in this action, and that her half interest in the said premises is of the approximate value of $1,800.00, and any reduction in the mortgage debt would be to her benefit.

"Fifth: This defendant further alleges that when the plaintiffs as receivers of said Peoples State Bank of South Carolina, first requested that the amount due and owing on the bond and mortgage alleged in the third and fourth paragraphs of the said complaint must be paid at once, this defendant then gave notice to its agent and attorneys that a set-off against the said mortgage debt and counterclaim was demanded to the amount of the deposit so lost."

In the prayer of said answer, the defendant Francis F. Carroll, based on the above allegations, by way of set-off and counterclaim, demands judgment against the plaintiffs for the sum of $1,169.29, with interest at 7 per cent. per annum thereon, from December 31, 1931; that is, for a sum of money equal to the amount of said deposit of the said Francis F. Carroll, as guardian for the said Julia Reynolds Carroll, and interest thereon. Mr. Carroll, in the said prayer, also asks the Court for such other and further relief as may be proper, just, and equitable.

For the infant defendant, Julia Reynolds Carroll, an answer was filed by Francis F. Carroll, as guardian *ad litem* for said infant, submitting her rights to the protection of

the Court. The said answer also denies any knowledge or information sufficient to form a belief as to the allegations "contained in the first to the tenth paragraphs of the complaint and demanded strict proof thereof." It was also alleged on behalf of the infant in said answer that she owns "in fee simple absolute a one-half undivided interest" in the real estate described in the complaint.

As to the answer of the defendant J. Waties Waring, trustee, filed by his attorney, Francis F. Carroll, it appears from the record in the cause that the pertinent portion of the same may be stated as follows: " * * * That on the 11th day of August, 1922, Francis F. Carroll, of Summerville, S. C., executed and delivered to him his certain deed whereby he conveyed the premises mentioned and described in the fourth article of the complaint to him, the said J. Waties Waring, in trust for Frances Eloise Carroll and Julia Reynolds Carroll, in fee simple absolute, and that by virtue of the law known as the statute of uses all interest, ownership, possession and benefits in and to the said premises was executed in and passed immediately to the said Frances Eloise Carroll and Julia Reynolds Carroll in fee simple absolute, and this defendant, J. Waties Waring, has no interest in or title to the said premises or to the possession thereof as trustee or otherwise, his trust estate being merely passive. And he has no interest in the said action."

In the answer of the defendant Frances Eloise Carroll, which answer was filed by Francis F. Carroll as her attorney, denial is made as to sufficient information to form a belief as to certain of the material allegations of the complaint, and she alleges, also, additional payments to those alleged by the plaintiff on the said bond and mortgage, before the assignment of the same to the said People's State Bank; and she further alleges that under the deed executed by Francis F. Carroll to J. Waties Waring, trustee, she is owner "in fee simple absolute" of a one-half undivided interest in the premises described in the complaint.

For a second defense, and by way of set-off and counter-claim, this defendant Frances Eloise Carroll further specifically alleged:

"First: That on the 31st day of December, 1931, she had on deposit in the savings department of Peoples State Bank of South Carolina in her name the sum of Five Hundred and Three Dollars, which sum was payable and demandable at its branch bank in the Town of Summerville, S. C., and which sum said Peoples State Bank of South Carolina, a corporation duly organized and doing a general banking business, was by law obliged to take good care of, and was by law obligated, and by its contract with this defendant, obligated, to hold itself at all time able and ready to repay said sum to said defendant, Frances Eloise Carroll, on demand and to pay same to her on demand.

"Second: That in violation of its obligation and duty to this defendant it allowed itself to become hopelessly insolvent, allowed the said deposit account to become utterly worthless and valueless, and on the 31st day of December, 1931, closed its doors, ceased business and placed itself in the hands of the South Carolina State Bank Examiner, and has failed to take good care of said funds, and failed to hold itself able and at all times ready to pay the amount of said deposit to this defendant, and has failed to pay the amount of said deposit or any part thereof to this defendant after demand and still owes this defendant Frances Eloise Carroll, the said sum of Five Hundred and Three Dollars, the amount of said deposit, with interest thereon from the 31st day of December, 1931, at the rate of seven per centum per annum.

"Third: That as this defendant, Frances Eloise Carroll, owns a one-half undivided interest in fee simple in the premises described in the fourth paragraph of said complaint on which plaintiffs are seeking to foreclose an alleged mortgage executed by Francis F. Carroll to Bank of Dorchester on the .... day of October, 1919, as alleged in the com-

plaint and now alleged to be held by the plaintiffs as receivers of Peoples State Bank of South Carolina, it would be to the best interests and to the benefit of this defendant to reduce the amount of the said alleged mortgage debt.

"Fourth: That when the plaintiffs, as receivers of said Peoples State Bank of South Carolina, first requested the payment of the alleged mortgage debt they were then informed that a credit and set-off would be claimed on the alleged mortgage debt to the full amount of said deposit with interest."

Based on these allegations, the following relief is asked: "Wherefore this defendant, Frances Eloise Carroll, demands judgment against the said William Elliott and Robert Gage, the plaintiffs, as receivers of said Peoples State Bank of South Carolina, by way of set-off and counterclaim to the alleged mortgage debt, for the sum of Five Hundred and Three Dollars with interest thereon from the 31st day of December, 1931, at the rate of seven per centum per annum, and for such other and further relief as may be proper, just and equitable."

The case comes to this Court on appeal from an order of the Circuit Judge sustaining demurrers interposed by the plaintiffs to the second defense, interposed by the defendant Francis F. Carroll, and also to the second defense interposed by the defendant Frances Eloise Carroll, contending that it appears on the face of said pleadings that the same do not constitute a defense or counterclaim, contending as to the defense of Francis F. Carroll that:

"1. It appears from the said amended answer, that the offset claimed is a deposit of money belonging entirely to the ward of the said defendant, Francis F. Carroll, and such funds held by him as guardian, are not within his unlimited control nor can they be subjected to the payment of the individual debts or obligations of the defendant, Francis F. Carroll.

"2. That there is no mutuality between the debt due by the defendant, Francis F. Carroll, individually, and the debt due by the plaintiffs herein to Francis F. Carroll, as guardian.

"3. The personal responsibility of the guardian to his said ward, alleged in said amended answer, is a mere conclusion, without the proper allegations of fact to support it."

As to the answer of the defendant Frances Eloise Carroll, the plaintiffs contend, under their demurrer, that it appears on the face of said answer that the said second defense thereof does not constitute a counterclaim or defense for the following reasons:

"1. The complaint alleges no debt due by the said defendant, Frances Eloise Carroll, nor is any personal judgment or affirmative relief demanded against her in the said complaint, and consequently the matter of offset does not properly arise herein.

"2. It appears from the pleadings herein, that any right, title or interest, which the said defendant, Frances Eloise Carroll, has in or to the premises sought to be foreclosed in this action is subservient to the lien of the said mortgage, and which fact is not controverted by the said answer, and therefore the offset or counterclaim which the said defendant, Frances Eloise Carroll, alleges, cannot be properly set up by her in this action for foreclosure."

In the order issued by his Honor, the Circuit Judge, sustaining the demurrers, his Honor did not assign any reasons therefor, but simply stated that the same were sustained.

We have quoted at length from the pleadings of the defendants for the purpose of setting forth the alleged facts in the case from the defendants' viewpoint, which alleged facts, for the purpose of ruling upon the demurrers, must, of course, be accepted as true. From my viewpoint, in reaching the right conclusion in this case, the cardinal fact to be kept in mind is that the defendant Frances Eloise Carroll, and her infant sister, Julia Reynolds Carroll, own, in fee-

simple absolute, the real estate which the plaintiffs, as receivers of the Peoples State Bank, ask to have sold for the purpose of satisfying a real estate mortgage debt, contracted by Francis F. Carroll, and that the said Frances Eloise Carroll and Julia Reynolds Carroll, daughters of the said Francis F. Carroll, had on deposit in the said bank, at the time it closed its doors for business, an amount of money sufficient to pay the said obligation of the said Francis F. Carroll, the amount of the deposit of Frances Eloise Carroll being $503.00, and the amount of the deposit of the infant, Julia Reynolds Carroll, being $1,169.29. In my opinion, as a matter of right and justice, the deposits of these young ladies should be credited upon the said mortgage obligation for the purpose of protecting their property, the real estate in question. As a matter of law, they took the property subject to the outstanding mortgage executed by their father, Francis F. Carroll, and, so far as this particular property is concerned, it is the same as if they had indorsed or agreed to pay the said obligation of their father, and as a matter of right are entitled to a set-off on said mortgage debt to the extent of the amount of their deposits, it being a recognized rule that an indorser, obligor, or grantor of an obligation (when he has to pay the obligation), is entitled to an offset in such cases the same as the principal of such obligation. According to my view, it is not right, just, or equitable to require the land of these young ladies to be sold to pay off the mortgage held by the Peoples State Bank without allowing a credit to the extent of the amount of their deposits in said bank. Even if, under the facts of the case, it should be held to be the duty of Francis F. Carroll, as between him and the insolvent bank, to pay the mortgage debt in question, and even though, as between him and his said daughters, it should be held to be his duty to settle the said mortgage indebtedness, still, as between the insolvent bank and these young ladies, equity entitles them to a credit on said mortgage indebtedness to the amount of

their said deposits before a sale of the mortgaged property involved should be ordered. In this connection I call attention to the fact that, in effect, the land involved was conveyed to these young ladies subject to the said mortgage lien thereon, and they must pay off the same or lose the property. Also it must be kept in mind that this is not a case at law, but it is a suit in equity. The plaintiffs are receivers for an insolvent institution, and all parties to the cause, plaintiffs and defendants, have asked for equitable relief. Therefore the Court, having all interested parties before it, is in a position to do what it deems to be right, fair, and just in the premises, and, I may add, according to my view, the facts and justice of the case require that the mortgage debt in question be credited with the amount of the deposits the said Frances Eloise Carroll and Julia Reynolds Carroll had in the said insolvent bank at the time it closed its doors for business. In reading the decisions of the Courts in cases bearing on this question, I find that one of the grounds upon which the Courts allow a set-off is that the party against whom it is allowed is insolvent, and that the party seeking the set-off has no redress at law. Therefore the Courts of equity allow the relief sought whenever it is consistent with justice and right. Both of these conditions appear in the case at bar. In this connection I may say that I do not think it out of place to state that it seems to be common knowledge that the depositors in the Peoples State Bank of South Carolina will receive little or nothing on their deposits. Certainly no Court of equity would question the right of the Misses Carroll to settle the said mortgage lien by paying into the hands of the receivers of the insolvent bank the amount owing on the said mortgage for the purpose of preventing a sale of the said premises they have title to; and, in my opinion, the Court of equity should allow them a credit, or set-off, in such transaction for the amount of money they had on deposit in the insolvent bank at the time its doors were closed for the transaction of business.

In connection with the views above expressed, I call attention to the case of *North Chicago Rolling-Mill Company v. St. Louis Ore & Steel Company*, 152 U. S., 596, 14 S. Ct., 710, 38 L. Ed., 565. On page 615 of 152 U: S., 14 S. Ct., 715, 38 L. Ed., 571 of the report of the case we find the following broad statement of the rule bearing on the question: "Cross demands and counterclaims, whether arising out of the same or wholly disconnected transactions, and whether liquidated or unliquidated, may be enforced, by way of set-off, whenever the circumstances are such as to warrant the interference of equity to prevent wrong and injustice."

In my opinion the set-off should be allowed in the case at bar to prevent wrong and injustice.

On the question we also cite 57 C. J., 361-365, inclusive, and we quote therefrom the following:

"To be complete, a definition of 'set-off' must embrace equitable set-off. A Court of equity, or a Court possessing equitable jurisdiction, has inherent power, as a part of its general jurisdiction, to allow or compel a set-off. This power is independent of statutes allowing a set-off; it was recognized and exercised prior to the enactment of such statutes; and it has not been taken away by their enactment, nor affected by their repeal."

"Equity will not aid a defendant in an action at law as to matters of set-off, when his legal remedies are complete and adequate; but it may allow a set-off where, from the nature of the claim or situation of the parties, justice cannot be done at law."

"Generally speaking, an equitable set-off will be allowed when the party seeking it shows some equitable ground therefor and it is necessary in order to promote justice, avoid or prevent irremediable injustice, or give effect to a clear equity of the party seeking it. Conversely, some ground for equitable interposition must be alleged and shown, and the set-off will not be allowed where it would be inequit-

able or work injustice, or where it is not necessary to prevent irremediable injustice. * * * "

"The insolvency of the party against whom a set-off is claimed may be a sufficient ground for the allowance of the set-off in equity. Although some early authorities inclined to the view that mere insolvency alone does not constitute a ground for the interference of the Court, and that some further equity must exist in order to induce an equity Court to act, other authorities take the position that insolvency is a distinct equitable ground of set-off, and may of itself raise an equity which will justify the interference of the Court. At any rate, insolvency is a material circumstance to be considered in determining whether an equitable set-off should be allowed, and, when coupled with other matters, may authorize the allowance of the set-off. * * * "

We also call attention to the statement of the principles on the question involved in 24 R. C. L., 792-807, inclusive. On page 804 of said volume the following pertinent statement appears: "Courts of equity interfere, in cases of set-off, on grounds analogous to those upon which their whole preventive jurisdiction is based, that is, to prevent irremediable injustice; and the criterion by which the allowance of set-off is to be determined is whether it is equitable. The general rule is that the remedy of equitable set-off may be enforced independently of the statutes governing set-off, where from the nature of the claim, or from the situation of the parties, it is impossible to obtain justice by plea or cross action; in other words, in these cases where, through no fault of the defendant, he has no adequate remedy at law. * * * "

As to the appellant Francis F. Carroll, I wish to state that I think the Court should allow him to amend his pleading, if so advised, by alleging the facts upon which he bases the statement and contention that the failure to pay to him his ward's money would render him personally liable. I wish to state, further, that I do not think the position of the appellant, Francis F. Carroll, is in conflict with the interest

of that of his ward. Whether the money which Mr. Carroll, as guardian for his ward, deposited in the bank in question is paid over to him for his ward or is applied on the mortgage debt for the purpose of preventing the sale of the said property which his ward has an interest in, will make little difference. In either event, the ward would be benefited. Certainly the Court could provide sufficient safeguard to protect the ward whether the money be paid to Mr. Carroll for her or whether it be credited on the said mortgage debt.

I shall not discuss the other questions presented by the appeal and argued by counsel, and I express no opinion on the same.

For the foregoing reasons, it is my opinion that the order of the Circuit Judge sustaining the demurrers should be reversed and the case remanded to the Circuit Court for trial, with the right of the parties to the cause to amend their pleadings as they may be advised.

## ON REHEARING

MR. JUSTICE BONHAM: This case was formerly heard, and an opinion filed the 21st day of February, 1934. Thereafter a petition for rehearing was filed, and it was urged that the prevailing opinion was concurred in by only two Justices owing to the fact that the Chief Justice was disqualified to sit in the case and Mr. Justice Cothran did not participate on account of illness. While the opinion filed was a legal and proper one, at the instance of the writer, the case was resubmitted at the present term of the Court, there being four Justices present, and the opinion as written, now concurred in by three Justices, becomes the judgment of the Court.

MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

MR. JUSTICE CARTER dissents.

MR. CHIEF JUSTICE BLEASE did not participate.