19657

The SOUTH CAROLINA NATIONAL BANK, GREENVILLE, South Carolina, as Trustee for the Simpson Foundation, Plaintiff-Respondent, v. Margaret Cooper HAMMOND, Individually, and as Executrix of the Estate of C. Kirby Hammond, et al., defendants, of whom Margaret Cooper Hammond, Individually, and as Executrix of the Estate of C. Kirby Hammond, et al., Appellants.

(198 S. E. (2d) 123)

. *O. G. Calhoun, Esq.,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville *for Appellants,*

624

*John J. McKay, Esq.*, of *Rainey, Fant & McKay*, Greenville, *for Respondents,*

July 11, 1973.

Moss, Chief Justice:

Charles P. Hammond, hereinafter referred to as Charles, died testate on August 12, 1952, and by the terms of his Last Will and Testament, which was duly admitted to probate on

August 15, 1952, provided that his estate was to be divided into two trusts. One-half of the said estate was to constitute the *corpus* of a marital deduction trust for the benefit of his wife, Jane G. Hammond (Jane), for her life and the remaining principal and undistributed income of this trust was to be paid over by the trustee to whomsoever she, by the exercise of a testamentary power of appointment should appoint. The other one-half of Charles' estate was to be held in trust with the income to be paid to Jane, for her life, and the *corpus* was to be paid over and distributed to C. Kirby Hammond (Kirby), if living at Jane's death, or, if not living, to the grandchildren of Charles then living, in equal shares.

Charles was survived by his wife Jane and his son Kirby, the latter being named as executor and trustee of the two testamentary trusts, but he did not divide the estate for the purpose of allocating the assets to the two trusts. Kirby, in November, 1956, was admitted to the State Hospital in Columbia, South Carolina, because of insanity. He was subsequently, on December 31, 1957, adjudged a person *non compos mentis,* by order of the Probate Judge of Greenville County, South Carolina. He died on May 19, 1965, without regaining his sanity. At the time of his death, he left surviving him his wife, Margaret C. Hammond (Margaret), and his two children, Kirby, Jr. and Jane G. Hammond (Jane G.). Kirby predeceased his mother, Jane, by approximately two years, she having died August 15, 1967.

The Probate Judge of Greenville County, on December 31, 1957, appointed Margaret C. Hammond and Rex L. Carter as Committee for Kirby. On January 10, 1958, the Committee petitioned the Probate Court to fix and approve the proper amounts which they would be authorized to pay for the support and maintenance of Kirby, his wife and two children, and his mother. The Judge of Probate, on January 13, 1958, issued his order authorizing the Committee (1) to expend a sum not exceeding $10.00 a week for the support and maintenance of Kirby; (2) to pay to Margaret for the support and maintenance of herself and two children a sum

not exceeding $200.00 per month, provided that this monthly payment should be no larger than the difference between Margaret's monthly net earnings and the sum of $600.00 per month; and (3) to pay to Jane, the mother of Kirby, for her support and maintenance the sum of $200.00 per month.

At the time Kirby was declared *non compos mentis* he owned approximately 61% of the capital stock of General Wholesale Distributors, Inc. and was the general manager thereof. Charles' estate owned approximately 39% of the capital stock of the corporation. The corporation was in financial distress and Kirby was indebted to it in a substantial amount. Kirby's Committee negotiated, subject to the court's approval, a contract to sell the stock of the corporation to R. L. Jones at its book value, conditioned upon the payment by Kirby's Committee of the amount of his personal indebtedness to the corporation. In order to consummate the sale, it was necessary for the Committee to purchase the shares of stock owned by Charles' estate for a consideration of $11,082.27. The Committee for Kirby, being without funds to carry out the terms of the contract, agreed to execute a note in the aforesaid amount to Charles' estate secured by a mortgage on Mills Avenue real estate owned by Kirby.

The Committee for Kirby instituted an appropriate action in the Greenville County Court joining all proper and necessary parties and seeking the approval of the contract of sale of the stock of General Wholesale Distributors, Inc. Following the taking of the testimony, with reference to the sale of the corporate stock, The Honorable W. B. McGowan, Judge of the Greenville County Court, issued his order, dated July 9, 1958, directing (1) that the Committee for Kirby sell his shares of the capital stock in the corporation to R. L. Jones; (2) that Kirby be removed as executor and trustee under the will of Charles and that H. F. Partee be appointed temporary trustee of said estate; (3) that the estate of Charles sell its interest in the corporation; (4) and that the estate of Charles lend to the Committee for Kirby the sum of

$11,082.27 and that the Committee for Kirby execute and deliver to H. F. Partee, temporary trustee, their note in behalf of Kirby for the aforesaid amount and secured by a mortgage on the Mills Avenue property, which is the subject of this action. The Committee for Kirby did, on July 9, 1958, execute and deliver to H. F. Partee, temporary trustee, their note in the aforesaid amount with interest thereon at 5% per annum due and payable July 9, 1960, and did on the same date execute a mortgage on the Mills Avenue property securing the payment of the indebtedness evidenced by the note. The mortgage was recorded on July 28, 1958, in the R. M. C. Office in Greenville County in Mortgage Book 754, at Page 43.

Kirby died testate on May 19, 1965, and by his will he devised all of his property to his wife, Margaret, who renounced all rights under the will and, in lieu thereof, elected to take dower. By reason of Margaret's renunciation under the will and election to take dower, the sole heirs at law of Kirby's estate are his children, Kirby, Jr. and Jane G., and as such they are entitled to take as if their father died intestate, all of his property subject to all enforceable liens and the allotment of dower.

Jane, the surviving wife of Charles, died on August 15, 1967, and by her will she devised her property to Kirby, but provided, if he predeceased her the income therefrom would go to Margaret for her life and the remainder to Kirby's two children, thereby exercising the power of appointment contained in the will of Charles.

It appears that three judgments were rendered against the Committee of Kirby, as follows: (1) Harris Upham & Company in the sum of $3,549.70, dated December 19, 1962; (2) South Carolina National Bank in the amount of $14,622.80, dated May 22, 1963, and; (3) Southland Life Insurance Company in the amount of $35,165.36, dated January 10, 1964.

H. F. Partee, temporary trustee of the estate of Charles, instituted in the Greenville County Court, on August 14,

1968, an action seeking the foreclosure of the mortgage executed to him by the Committee of Kirby, it being alleged that the debt secured by said mortgage and evidenced by the note hereinbefore referred to, was in default. It is further alleged that this said mortgage is junior in lien to a mortgage given by Kirby to the First National Bank of Greenville, South Carolina, and Alice Burnett Cleveland, as executors of the estate of W. C. Cleveland, deceased, such being dated September 21, 1956, and recorded in the R. M. C. Office for Greenville County in Mortgage Book 692, at Page 73. This mortgage was thereafter assigned, on January 10, 1963, to the South Carolina National Bank, Greenville, South Carolina, as trustee for the Simpson Foundation.

The South Carolina National Bank, as trustee for the Simpson Foundation, did, on August 15, 1968, institute an action seeking the foreclosure of its first mortgage on the same property. It appears that on January 20, 1970, these two actions were, by a consent order, consolidated in the Court of Common Pleas and were referred for trial to the Master in Equity for Greenville County. All necessary and proper parties were joined as defendants in said action including the judgment creditors hereinbefore named, who filed answers setting forth their claims and asking that the court determine priorities in the proceeds of the sale of the mortgaged property.

The Master, after an evidentiary hearing, filed his report finding that: the mortgage held by the South Carolina National Bank, as trustee for the Simpson Foundation, constituted a first lien upon the property in question and was entitled to foreclosure; the dower interest of Margaret was next in priority, entitling her to one-sixth of any surplus after the satisfaction of the Simpson Foundation mortgage.

He further found that the mortgage held by H. F. Partee, as temporary trustee, was not entitled to foreclosure and the parties to benefit therefrom are equitably estopped from de-

riving preference to the judgment creditors above named. In addition thereto, the Master held: (1) that the beneficiaries of Charles' estate, and of the H. F. Partee trust included therein, were equitably estopped from claiming benefits under the note and mortgage held by the said Partee by virtue of their having acquiesced in the allocation of assets of Charles' estate by Kirby to his own estate; and (2) that the sums distributed to or expended for the benefit of Jane, Margaret, Kirby, Jr., and Jane G., by the Committee for Kirby, should be equitably set off against, and thereby extinguish, the mortgage debt of the Committee for Kirby to Partee, as temporary trustee for Charles' estate. It was the conclusion of the Master that the Mills Avenue property should be sold and the proceeds of such sale should be applied to (1) the payment of the amount secured by the Simpson Foundation mortgage; (2) one-sixth of the total sales price of the property, payable only from any surplus, after the payment of the Simpson Foundation mortgage, to Margaret as her dower interest; and (3) the remainder, if any, be applied (a) to the payment of the judgment of Harris Upham & Company; (b) to the judgment of the South Carolina National Bank; (c) to the judgment of Southland Life Insurance Company; and, (d) if any surplus remained, it should be held for the further order of the court.

The appellants here duly excepted to the findings and recommendations of the Master. Such appeal was heard by the Honorable Frank Eppes, Resident Judge of the Thirteenth Circuit, who, by his decree dated April 3, 1972, affirmed the Report of the Master. This appeal followed.

The first question for determination is whether the payments to or expended for the maintenance and support of Jane, Margaret, Kirby, Jr., and Jane G. by the Committee for Kirby, pursuant to a court order, should be equitably set off against the mortgage debt of Kirby, through his Committee, to Partee, as temporary trustee of Charles' estate.

As a general rule in equity, as at law, it is essential to the establishment of a set off that the claims or debts be mutual, that is, they must subsist or be owing between the same parties in the same right or capacity, and must be of the same kind or quality. Equity will not ordinarily allow a set off of debts accruing in different rights or in dissimilar capacities. 20 Am. Jur. (2d), Counterclaim, Recoupment, etc., Section 75, at Page 293. This Court has followed the rule stated in *Elliott v. Carroll,* 172 S. C. 276, 173 S. E. 908, and *White v. Jackson,* 252 S. C. 274, 166 S. E. (2d) 211.

There can be no doubt that Kirby was indebted to the judgment creditors. He was also, pursuant to a court order and by and through his Committee, indebted to Partee, as a temporary trustee of Charles' estate. Charles' estate and H. F. Partee, as temporary trustee thereof, were in no wise indebted to the judgment creditors of Kirby. The widow of Charles and the wife and children of Kirby were likewise not indebted to the judgment creditors. Since there was no obligation or debt owed by either H. F. Partee, as temporary trustee, or by the beneficiaries of Charles' estate, to Kirby or to his judgment creditors, there was simply no debt which could be allowed as an offset against the mortgage obligation.

The appellants assert that the lower court committed error in holding that they were equitably estopped from claiming benefits under the note and mortgage held by Partee by virtue of their having acquiesced in the allocation of assets of Charles' estate by Kirby to his own estate.

The burden of proof is upon the party who asserts an estoppel. *Davis v. Sellers,* 229 S. C. 81, 91 S. E. (2d) 885. The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and in-

consistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Macaulay v. Howard,* 230 S. C. 140, 94 S. E. (2d) 393. In *Hubbard v. Beverly,* 197 S. C. 476, 15 S. E. (2d) 740, 135 A. L. R. 1206, we held that the doctrine of estoppel applies if a person, by his actions, conduct, words or silence which amounts to a representation, or a concealment of material facts, causes another to alter his position to his prejudice or injury. *Frady v. Smith,* 247 S. C. 353, 147 S. E. (2d) 412.

The appellants do not disagree with the findings of the Master that Kirby acted other than in full compliance with the terms of Charles' will and neglected to perform the fiduciary duties imposed upon him as executor and trustee thereof. The appellants do contend that such impropriety by Kirby does not equitably estop the beneficiaries of Charles' estate from benefits to which they are entitled therefrom, even though they had, pursuant to an order of the court, received support and maintenance from Kirby's Committee.

The Partee mortgage was an asset of Charles' estate and was subject to the trusts provided for in his will. Taking into consideration the terms of Charles' will and the dates of the deaths of Kirby and Jane, Margaret now has the life interest if this asset passed under the marital deduction trust and at her death the remainder will go to Kirby, Jr. and Jane G., the grandchildren of Charles. Under the second trust provided for in Charles' will, Jane and Kirby being dead, the grandchildren take as sole beneficiaries under his will.

The judgment creditors do not attack the validity of the order of the Honorable W. B. McGowan, Judge of the Greenville County Court, directing the estate of Charles to sell its interest in General Wholesale Distributors, Inc. and that the estate of Charles lend the Committee for Kirby the sum of $11,082.27 and to evidence such by a note and mortgage executed by the Committee of Kirby to H. F. Partee, as temporary trustee. There is no claim that the note and mortgage given was invalid for any reason. Likewise, the judgment creditors do not assert the invalidity of the order of the Judge of Probate for Greenville County authorizing the expenditure of fixed sums for the support and maintenance of Jane, the wife of Charles, and Margaret and her two minor children, but do assert because of such payments, pursuant to a lawful order, that these same parties are now estopped to take as beneficiaries under the will of Charles, basing such on the contention that the appellants acquiesced in the misconduct of Kirby.

By a review of the facts revealed by this record, there is a total lack of any testimony to sustain the contention that these appellants were estopped to claim their rights as beneficiaries under the will of Charles. There is no testimony to the effect that the judgment creditors relied on any representation, acts, non-acts, or silence of the appellants, or were misled in any way to change their position by reason of such. We quote appropriate applicable language from the case of *Ott v. Ott,* 182 S. C. 135, 188 S. E. 789, the following:

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated."

It is our conclusion that the lien of the mortgage of the Committee for Kirby to H. F. Partee, temporary trustee, has priority over the liens of the judgment creditors. Upon the remand of this case, the lower court should determine the amount due under the mortgage held by H. F. Partee, temporary trustee and such should be foreclosed in this action.

In view of our conclusions above recited, it becomes unnecessary to consider the other questions raised by the appellants.

Reversed and Remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.