493 S.E.2d 100

**Linda LaROSA, Respondent,**

v.

**Debra JOHNSTON, Appellant.**

**No. 2735.**

Court of Appeals of South Carolina.

Heard Sept. 9, 1997.

Filed Oct. 20, 1997.

Thomas E. Lydon, of Simmons, Griffin & Lydon, L.L.P., Columbia, for appellant.

Frank S. Potts, of Lide, Montgomery, Potts & Medlock, P.C., Columbia, for respondent.

HOWELL, Chief Judge:

This is an action by Linda LaRosa to collect funds to satisfy a judgment against Debra Johnston. The master-in-equity ordered that the judgment be paid after the ten year statute of limitations on LaRosa's judgment expired. Johnston appeals the master's decision. We reverse.

## I.

LaRosa obtained a default judgment for $5,744.00 against Johnston which the Richland County Clerk of Court filed on March 11, 1986. Johnston did not have the funds to satisfy the judgment. In 1989, however, Johnston stood to inherit enough money from her mother's will to pay LaRosa's judgment. Before Johnston collected her inheritance, however, her mother's will became involved in protracted litigation which was unrelated to this case.

On April 15, 1991, LaRosa instituted supplemental proceedings to have the circuit court issue a rule to show cause and order of reference demanding that Johnston appear before a master in equity to explain why her inheritance should not be used to satisfy LaRosa's judgment. On July 18, 1991, the personal representative of Johnston's mother's estate was also

added to the rule to show cause. On September 20, 1991, the personal representative from the estate agreed to a consent order which permanently enjoined any distribution to Johnston without a court order.

On February 26, 1996, LaRosa moved the court for an order to appoint a receiver to collect and appropriately distribute an amount from Johnston's inheritance to satisfy her judgment. During the hearing, Johnston, appearing *pro se*, indicated her consent to the payment of LaRosa's judgment from the distribution of her mother's estate. Specifically, Johnston stated that "if [LaRosa] wants my mother's estate to pay my debts, that's fine. I don't have any problem with it." On March 15, 1996, the master signed a written order authorizing the personal representative of Johnston's mother's estate to pay LaRosa's judgment. The clerk filed the order on March 18, 1996.

Johnston subsequently filed a motion to alter, amend, and vacate the master's order. The master denied Johnston's motion. Johnston appealed the master's decision.

## II.

On appeal, Johnston argues that the master erred in denying her motion to alter, amend, and vacate his order, because LaRosa's judgment against Johnston expired on March 11, 1996—ten years after the judgment was filed. We agree.

"A judgment represents a judicial declaration that a judgment debtor is personally indebted to a judgment creditor for a sum of money." *Wells v. Sutton,* 299 S.C. 19, 22, 382 S.E.2d 14, 16 (Ct.App.1989) (citing *Ducker v. Standard Supply Co., Inc.,* 280 S.C. 157, 311 S.E.2d 728 (1984)). South Carolina Code section 15–39–30, which governs the duration of judgments, states:

> Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, *without any renewal or renewals thereof,* and this whether any return may or may not have been made during such period on such executions.

S.C.Code Ann. § 15–39–30 (1976) (emphasis added). South Carolina courts have consistently held that a judgment is utterly extinguished ten years from the date of entry. *Hardee v. Lynch,* 212 S.C. 6, 46 S.E.2d 179 (1948); *TranSouth Fin. Corp. v. Cochran,* 324 S.C. 290, 478 S.E.2d 63 (Ct.App.1996); *Wells,* 299 S.C. at 22, 382 S.E.2d at 16; *cf. Garrison v. Owens,* 258 S.C. 442, 189 S.E.2d 31 (1972) (holding that a judgment lien on real estate is absolutely extinguished after expiration of ten years from date of entry).

LaRosa's judgment did not become effective until the clerk filed it on March 11, 1986. Rule 58(a), SCRCP ("Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and entered in the record."); *see also Bayne v. Bass,* 302 S.C. 208, 394 S.E.2d 726 (Ct.App.1990) (a final decree becomes effective only when it has been delivered by the judge to the clerk of court for the clerk to file as the order in the case). Starting on March 11, 1986, the judgment was good until March 11, 1996. S.C.Code Ann. § 15–39–30 (1976). The master's order compelling payment of LaRosa's judgment from Johnston's mother's estate was not final until it was filed on March 18, 1996. Rule 58(a), SCRCP. Because the judgment expired before the entry of the master's order, there was nothing upon which LaRosa could execute.

### III.

LaRosa argues that Johnston's consent to payment before the judgment expired should bar Johnston from challenging the master's order compelling payment after the judgment expired. We disagree.

Unquestionably, Johnston consented to the payment before the judgment expired. Johnston notes that when she conceded to payment, she "had no basis for challenging [LaRosa's] judgment." Moreover, Johnston's consent never mentioned extending the statutory limitation of LaRosa's judgment. When the judgment expired, Johnston acquired a statutory defense that had previously been unavailable. We are not going to penalize Johnston for failing to raise a defense which she could not have raised. *See Wagner v. Wagner,* 286 S.C. 489, 335 S.E.2d 246 (Ct.App.1985) (holding

that a defense of collateral estoppel not available at the pleading stage can nevertheless be raised at a later time when the defense is actually available). Thus, Johnston's bare consent to payment before the expiration of the judgment did not affect her rights after the judgment expired.

We note, however, that under certain circumstances the doctrine of equitable estoppel may be a valid check against misleading statements intended to delay execution until after the statutory period.

> The essential elements of an equitable estoppel as related to the party estopped are: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*South Carolina Nat'l Bank, Greenville v. Hammond,* 260 S.C. 622, 630, 198 S.E.2d 123, 128 (1973). Nothing in the record establishes that Johnston's consent amounted to a false representation. As stated before, at the time of her consent, Johnston "had no basis for challenging [LaRosa's] judgment." Even assuming that Johnston's consent was a misleading statement coupled with intent and full knowledge, nothing in the record indicates that LaRosa relied on Johnston's statement. Therefore, equitable estoppel is inapplicable in this case.

## IV.

LaRosa also argues that the 1991 permanent injunction effectively attached Johnston's inheritance. We disagree.

"[E]xecution is [the] only process to enforce the judgment." *Cheraw & C.R. Co. v. Marshall,* 40 S.C. 59, 63, 18 S.E. 247, 249 (1893). The funds on which LaRosa sought to

execute constituted personal property.[1]  South Carolina Code section 15–39–100 states, "Executions shall not bind the personal property of the debtor, but *personal property shall only be bound by actual attachment or levy* thereon for the period of four months from the date of such levy."  S.C.Code Ann. § 15–39–100 (1976) (emphasis added).  Attachment is defined as "the act or process of taking, apprehending, or seizing persons or property, by virtue of a writ, summons, or other judicial order, and bringing the same into the custody of the law."  *United States v. Southern Growth Indus., Inc.,* 251 S.C. 404, 408, 162 S.E.2d 849, 851 (1968).  In *Southern Growth,* the South Carolina Supreme Court held that the verbatim predecessor to section 15–39–100 [2] "requires that the lien be attached to certain property by reducing it to possession."  251 S.C. at 408, 162 S.E.2d at 851.  Possession, according to the *Southern Growth* court, constitutes "a right to lay [the creditor's] hands on" the property.  *Id.* at 409, 162 S.E.2d at 851.

The legal issue in *In re Inter–Pac, Inc.,* 36 B.R. 488 (D.S.C.1982), parallels the issue that LaRosa raises in this case.  In *Inter–Pac,* "The sole legal issue presented ... [was] whether under South Carolina law a judgment creditor obtains a perfected [judgment] lien upon personal property of the judgment debtor by virtue of a judicial order restraining the debtor from disposing of property pending the outcome of supplementary proceedings."  36 B.R. at 490.  The federal district court in *Inter–Pac* looked to the *Southern Growth* decision and held that even though the creditor obtained an injunction restraining the debtor from disposing of the property, the injunction did not amount to possession and was therefore insufficient to effectively attach the goods.  *Id.* at 489.

Given the holdings of *Inter–Pac* and *Southern Growth,* the 1991 permanent injunction issued to the personal representa-

---

1.  Nothing in the briefs or record indicates that LaRosa attempted to satisfy her judgment from any real property inheritance.  LaRosa's brief seems to indicate that the personal representative liquidated any of Johnston's real property inheritance.

2.  *Southern Growth* took place before the 1976 recodification of the South Carolina Code.  What the *Southern Growth* court cites as section 10–1711 was recodified section as 15–39–100 in 1976, with no change to the statutory language.

tive in this case did not amount to possession because the personal representative retained control over the inheritance. LaRosa never did anything which equaled a right to lay her hands on Johnston's inheritance. Thus, the 1991 permanent injunction was not sufficient to attach the inheritance. Without an attachment, LaRosa never had a proper execution to enforce the judgment.

## V.

In summary, we hold that the master erred in issuing an order to satisfy LaRosa's judgment ten years after the judgment was entered. Section 15–39–30 is an absolute statutory limitation on judgments, which cannot be renewed. In addition, Johnston's bare consent to payment before the advent of the ten years limitation did not bar her from claiming the benefit of a defense that she did not have at the time of her consent. Finally, LaRosa's supplemental proceeding to obtain a permanent injunction issued to the personal representative of Johnston's mother's estate in 1991 did not constitute an effective attachment on the inheritance. For the foregoing reasons, the decision below is reversed.

REVERSED.

HEARN and STILWELL, JJ., concur.