512 S.E.2d 123

COMMERCIAL CREDIT LOANS, INC., Appellant,

v.

Roy RIDDLE, Beverly Riddle, and One
Stop Mortgage, Defendants,

Of whom Roy Riddle and One Stop Mortgage are Respondents.

No. 2929.

Court of Appeals of South Carolina.

Submitted Jan. 12, 1999.

Decided Jan. 18, 1999.

Rehearing Denied March 27, 1999.

John Gulledge, of Greenwood, for appellant.

James S. Verner, of Harley & Verner, of Newberry, for respondent One Stop Mortgage.

Roy Riddle, of Newberry, pro se.

HEARN, Judge:

In this supplemental proceeding, Commercial Credit Loans, Inc. seeks to enforce a judgment it originally obtained against Roy and Beverly Riddle in Illinois. The special referee found South Carolina's ten year enforcement period for execution on

a judgment barred the present proceeding. Commercial Credit appeals. We reverse in part and affirm in part.[1]

### Facts/Procedural History

On July 26, 1985, the Riddles purchased property in Newberry County. After receiving notice of Commercial Credit's pending suit in Illinois, the Riddles conveyed the property to Ezell Kyzer on February 5, 1986. The deed was promptly recorded in Newberry County and recited a consideration of $2,000 plus assumption of the existing mortgage. Commercial Credit obtained a default judgment against the Riddles in Illinois on May 27, 1986, and subsequently brought an action in South Carolina to domesticate the foreign judgment.[2] Pursuant to a circuit court order dated February 13, 1989, granting judgment against the Riddles, the South Carolina judgment was enrolled in the Book of Abstracts for Newberry County on February 21, 1989. On May 11, 1990, Commercial Credit issued an execution against the Riddles in Newberry County; it was returned *nulla bona.*

The admitted purpose of the original transfer of the Newberry property from the Riddles to Kyzer was to avoid the Illinois judgment. On October 25, 1996, Kyzer and Roy Riddle recorded a document declaring that "Mr. Riddle is in fact the true owner of the property." According to this document, the property was titled to Kyzer to "protect his interest in the down payment funds which he loaned to Mr. Roy Riddle to purchase said property and the names will be changed on the titled [sic] at such time as Mr. Riddle fully pays back the down payment money to Mr. Kyzer."

Riddle reacquired legal title to the Newberry County property from Kyzer by deed dated April 21, 1997, and recorded on April 30, 1997. Contemporaneous with this transaction, Riddle refinanced the indebtedness on the property by giving a mortgage to One Stop Mortgage. The HUD–1 settlement

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. South Carolina did not adopt the Uniform Enforcement of Foreign Judgments Act until 1993. *See* S.C.Code Ann. § 15–35–900 (Supp. 1997).

statement refers to the refinance as a Transaction Without Sellers.

Commercial Credit, through this action, attempted to execute upon the Newberry property in September 1997. The action was referred to the special referee for entry of a final order with direct appeal to the South Carolina Supreme Court.

The special referee concluded the primary legal issue in the case was the enforcement period for judgments as specified in South Carolina Code section 15–39–30. He held the date of "original entry" as specified by the statute was the date the judgment was originally entered in the rendering state, Illinois. Accordingly, he ruled the judgment was extinguished as of May 27, 1996, ten years after its date of entry in Illinois, even though the judgment was not domesticated in South Carolina until February 21, 1989.

The referee also concluded Commercial Credit failed to pursue diligently its efforts to collect on the judgment. Therefore, any fraudulent actions taken by the Riddles to conceal property from Commercial Credit did not extend the time for execution. With respect to One Stop Mortgage, the referee held its mortgage did not have priority over Commercial Credit's judgment because it was not a purchase money mortgage.

## Discussion

A. Interpretation of "Original Date of Entry"

■ Commercial Credit argues the special referee erred in relating the date of original entry back to the date of entry in Illinois. It argues the proper date of original entry when calculating the enforcement period of a South Carolina judgment is the date it was entered in South Carolina. We agree.

■ Prior to this state's adoption of the Uniform Enforcement of Foreign Judgments Act, a judgment creditor who possessed a foreign judgment against a South Carolina judgment debtor was required to domesticate the foreign judgment before it could be enforced against property of the debtor in this state. This was accomplished by the creditor bringing a suit in South Carolina and pleading the foreign judgment as the cause of action. By this process, the foreign

judgment was recognized by a South Carolina court, and a South Carolina judgment was obtained. *Mitchell v. Mitchell,* 266 S.C. 196, 222 S.E.2d 499 (1976).

█ A South Carolina judgment entered upon the book of abstracts and duly indexed constitutes a lien upon the real estate of the judgment debtor located in the county where the judgment is indexed for a period of ten years. S.C.Code Ann. § 15–35–810 (1976); *Wells ex rel A.C. Sutton & Sons, Inc. v. Sutton,* 299 S.C. 19, 22, 382 S.E.2d 14, 16 (Ct.App.1989). Code section 15–39–30 governs the duration of judgments in this state and provides:

> Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof, and this whether any return may or may not have been made during such period on such executions.

Our state courts have held a judgment is extinguished ten years from the date of entry. *LaRosa v. Johnston,* 328 S.C. 293, 493 S.E.2d 100 (Ct.App.1997) (dealing with an original South Carolina judgment); *Sutton,* 299 S.C. 19, 382 S.E.2d 14.

The institution of an action to domesticate a foreign judgment specifically contemplates that a South Carolina judgment will be issued by a South Carolina court.[3] At that point, pursuant to section 15–35–810, this South Carolina judgment may then be abstracted and indexed so as to constitute a lien upon the debtor's real property for a period of ten years. It logically follows that section 15–39–30 also deals with the date of original entry of the South Carolina judgment which may then be executed upon for a period of ten years. *See also Chester & Cheraw R.R. v. Marshall,* 40 S.C. 59, 63, 18 S.E. 247, 249 (1893) (" 'The execution is [the] only process to enforce the judgment, and it cannot have active energy unless

---

**3.** The adoption of the Uniform Enforcement of Foreign Judgments Act does not alter this analysis. Once a foreign judgment has been properly filed it must be docketed and indexed in the same manner as a judgment of this state. S.C.Code Ann. § 15–35–920(B). A judgment so filed "has the same effect and is subject to the same defenses as a judgment of this State and must be enforced or satisfied in like manner." S.C.Code Ann. § 15–35–920(C); *see NationsBank of North Carolina N.A. v. Parsons,* 324 S.C. 506, 477 S.E.2d 735 (Ct.App.1996).

the underlying judgment has a lien'" (citations omitted)); *Bayne v. Bass,* 302 S.C. 208, 394 S.E.2d 726 (Ct.App.1990) (final decree becomes effective only when it has been delivered by the judge to the clerk of court for the clerk to file as the order in the case); Rule 58(a), SCRCP ("Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and entered in the record."). In the context of this case, the Illinois judgment was transmuted into a South Carolina judgment when it was domesticated and the judgment duly enrolled on February 21, 1989. Thus, both the ten year lien period on real estate and the ten year period for enforcement of the judgment began on that date. *See Tran-South Fin. Corp. v. Cochran,* 324 S.C. 290, 478 S.E.2d 63 (Ct.App.1996) (The wording of sections 15–35–810 and 15–39–30 indicates the judgment lien continues for ten years and that execution upon judgments must issue within ten years.).

We believe this construction of section 15–39–30 is consistent with the manner in which other states have dealt with the issue of enforcement of registered or domesticated foreign judgments.[4] In *Drllevich Constr. Inc. v. Stock,* 958 P.2d 1277 (Okla.1998), the Oklahoma Supreme Court held a foreign judgment which is enforceable at the time the judgment creditor registers it in Oklahoma will be considered, for the purpose of enforcement, as a new judgment of the state of Oklahoma. Similarly, the Nebraska Court of Appeals held that the count for dormancy of a judgment begins on the date the foreign judgment is brought to a state and registered. *St. Joseph Dev. Corp. v. Sequenzia,* 7 Neb.App. 759, 585 N.W.2d 511, 516 (1998). The Utah Supreme Court held a foreign judgment properly filed in Utah under the Utah Foreign Judgment Act created a new Utah judgment for purposes of enforcement. *Pan Energy v. Martin,* 813 P.2d 1142 (Utah 1991). Also, the Virginia Supreme Court in *Carter v. Carter,* 232 Va. 166, 349 S.E.2d 95 (1986), discussing the distinction between the time period for bringing an action on a foreign judgment and the time period for enforcement of a judgment, stated:

---

4. We use the term "registered" to denote those foreign judgments which are filed in accordance with the procedures of the Uniform Enforcement of Foreign Judgment Acts. The term "domesticated" refers to the common-law procedure of bringing an action upon the foreign judgment.

Code § 8.01–251 imposes a 20–year limitations period on the *enforcement* of judgments. Code § 8.01–252, however, imposes a period limiting to 10 years the time in which a party may bring an action in Virginia on a foreign judgment. Once the foreign judgment is reduced to a Virginia judgment under this provision, enforcement of the judgment, like any originating in Virginia, is subject to the 20–year limitation period of § 8.01–251. Thus, a foreign judgment creditor may actually have as many as 30 years to enforce his judgment.

*Id.* at 98 (emphasis in original).[5]

We conclude the special referee erred in his interpretation of section 15–39–30. The language "from the date of original entry thereof" refers to the date of entry of a South Carolina judgment. In this case, that date was February 21, 1989. Consequently, the ten year enforcement period runs through February 21, 1999.

### B. Tolling the Enforcement Period

■ Commercial Credit also argues the special referee erred in concluding it was not entitled to relief from the enforcement period limitation because it did not diligently pursue its collection efforts. Commercial Credit argues the admitted purpose of the conveyance from the Riddles to Kyzer was to avoid the Illinois judgment. Although we disagree with the special referee that Commercial Credit's efforts lacked diligence, this does not change that the enforcement period cannot be tolled.

■ The special referee's unappealed ruling that the conveyance was fraudulent and therefore void has become the law of the case. *Burris v. Electro Motive Manuf. Co.*, 247 S.C. 579, 583, 148 S.E.2d 687, 688 (1966). A cause of action based upon South Carolina Code section 27–23–10 to set aside a fraudulent conveyance must be commenced within six years

---

**5.** *See also Trubenbach v. Amstadter*, 109 Nev. 297, 849 P.2d 288 (1993) (When a party registers a valid foreign judgment in Nevada it constitutes a new action for purposes of the enforceability of the judgment under Nevada law.); *Warner v. Warner*, 9 Kan.App.2d 6, 668 P.2d 193 (1983) (Registration of a foreign judgment that is enforceable when registered gives the judgment creditor a new five year period under Kansas dormancy law to execute, regardless of when the judgment was rendered in the foreign state.).

of the conveyance. S.C.Code Ann. § 15–3–530. The accrual of the action is tolled, however, until the aggrieved party discovers or should have discovered facts, which by the exercise of due diligence, would be sufficient to put the creditor on notice of the fraud. *Walter J. Klein Co. v. Kneece,* 239 S.C. 478, 123 S.E.2d 870 (1962). In *Kneece,* the court found the plaintiff's action was time barred for lack of due diligence. Sometime before 1950, the plaintiff had extended credit to the defendant based in part on his ownership of land. On October 26, 1950, the defendant deeded the land to his wife, and they promptly recorded the deed, which recited a consideration of $5.00, love, and affection. One month before the transfer, the defendant had mortgaged the property, and that mortgage remained on the books in his name. On August 9, 1951, the plaintiff received a judgment against the defendant that was executed and returned *nulla bona.* The plaintiff then sued several years later, alleging it had no knowledge of the fraudulent conveyance until June 1960. The court refused to toll the running of the six year statute of limitations, finding that the plaintiff knew the defendant owned property at the time the line of credit was issued, so that when the *nulla bona* return came back, it was put on notice of facts, which with due diligence, would have exposed the fraud. *Id.* at 485, 123 S.E.2d at 874.

In the instant case, Riddle's conveyance to Kyzer likewise came very soon before the Illinois judgment. However, unlike *Kneece,* the deed was between unrelated parties and appeared regular on its face. The recited consideration was $2,000 plus assumption of the existing mortgage. While the mortgage appears to have remained in Riddle's name, this fact alone is probably insufficient to charge Commercial Credit with lack of due diligence. Because there is no evidence in the record that Commercial Credit extended credit to Riddle in Illinois based upon his ownership of property in South Carolina,[6] we decline to give the *nulla bona* return the same significance the *Kneece* court attached to it. Thus, it was not until October 25, 1996, when the agreement between Riddle and Kyzer was recorded, that Commercial Credit could be charged with facts sufficient

---

6. We find it doubtful, in any case, because Riddle did not purchase the Newberry property until July 1985, less than a year before the Illinois judgment was entered.

to put it on notice of fraud. Consequently, we find that Commercial Credit's title search and commencement of this action less than one year later was diligent.

■ Although due diligence will toll the six year statute of limitations within which a fraudulent conveyance case must be commenced, this is not such a case. Here we have an enforcement action wherein Commercial Credit seeks to foreclose its lien against Riddle's property pursuant to a judgment of limited duration. The public policy of this state is to limit the life of a judgment to ten years.[7] While this court does not condone efforts by judgment debtors to secrete assets to avoid payment of judgment, "[a] judgment creditor should recognize this [public] policy and proceed expeditiously to conclude his efforts to collect his judgment within the ten year period." *Wells ex rel A.C. Sutton & Sons, Inc. v. Sutton,* 299 S.C. 19, 22, 382 S.E.2d 14, 16 (Ct.App.1989) (enforcement period not tolled during pendency of appeals, even though litigation to trace and recover assets was continuous from the time judgment was entered until it expired ten years later); *see also Garrison v. Owens,* 258 S.C. 442, 446–7, 189 S.E.2d 31, 33 (1972) ("A judgment lien is purely statutory, its duration as fixed by the legislature may not be prolonged by the courts and the bringing of an action to enforce the lien will not preserve it beyond the time fixed by the statute, if such time expires before the action is tried."); *accord TranSouth Fin. Corp. v. Cochran,* 324 S.C. 290, 478 S.E.2d 63 (Ct.App.1996) (although ten year limitations period is absolute, this does not affect a guarantor's liability to secure a debt under a separate contract).

---

7. We note that this court has suggested that, given the appropriate factual circumstances, the doctrine of equitable estoppel may be invoked when a creditor relies upon a debtor's misleading statements intended to delay execution until the enforcement period expires. *La-Rosa v. Johnston,* 328 S.C. 293, 298, 493 S.E.2d 100, 102 (Ct.App.1997) (debtor's consent to pay judgment did not equitably estop her from refusing payment upon limitation period's expiration); *cf. Hardee v. Lynch,* 212 S.C. 6, 14, 46 S.E.2d 179, 182 (1948) ("Judgment liens are creatures of law, and cannot be enforced in equity when they have ceased to be enforceable at law"). However, given the strong public policy to limit the enforcement of judgments to ten years, and given that Commercial Credit has not pled the elements of equitable estoppel, we decline to address whether this case is factually appropriate for such relief.

■ Commercial Credit also argues that South Carolina Code section 15–3–30 [8] should toll the statute of limitations for the two years during which Riddle was absent from South Carolina. We disagree.

The language of section 15–3–30 refers to a defendant who is not only physically absent from this state but who is also not amenable to personal jurisdiction under South Carolina's long arm statute.[9] *Meyer v. Paschal*, 330 S.C. 175, 498 S.E.2d 635 (1998). Commercial Credit has not provided any evidence in the record that Riddle was beyond the reach of South Carolina's long arm statute during his alleged absence, or that any attempt was made to commence this action during Riddle's absence. In addition, supplementary proceedings do not necessarily invoke the use of the long arm statute to effect service of process. S.C.Code Ann. § 15–39–350 (1976) (judge may issue an order requiring a debtor to appear and answer concerning an alleged debt or judge may require notice to be given to any party in "such manner as may seem to him proper"). Further, because the transcript of the proceedings below is omitted from the record, it appears the first time Commercial Credit made this argument was in its Rule 59(e) motion for reconsideration. Accordingly, this issue is not properly preserved for our review. *Patterson v. Reid,* 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) (party cannot use a motion to reconsider, alter, or amend a judgment to present an issue that could have been raised prior to the judgment but was not); *see also Crestwood Golf Club, Inc. v. Potter,* 328 S.C. 201, 493 S.E.2d 826 (1997) (appellant has the burden of presenting a sufficient record to allow review).

---

8. The statute reads:

> If when a cause of action shall accrue against any person he shall be out of State, such action may be commenced within the terms in this chapter respectively limited after the return of such person into this State. And if, after such cause of action shall have accrued, such person shall depart from and reside out of this State or remain continuously absent therefrom for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.

9. S.C.Code Ann. § 36–2–803 (1976). We would note that in any case, the subject of the enforcement action, the real property, was at all times located in South Carolina.

## C.   One Stop's Priority

In its respondent's brief, One Stop Mortgage argues the special referee failed to determine the amount, if any, that its mortgage is entitled to priority over the judgment of Commercial Credit in the event the judgment is determined to be viable.  We need not address this issue because One Stop did not appeal the special referee's finding that One Stop did not have a purchase money mortgage.  *Burris v. Electro Motive Manuf. Co.*, 247 S.C. 579, 583, 148 S.E.2d 687, 688 (1966) (unappealed ruling becomes the law of the case); Rule 203(c), SCACR (proper procedure for filing a cross appeal).  Thus, this issue is not properly before this court for review.

### Conclusion

We reverse that portion of the special referee's order which concludes the judgment of Commercial Credit was extinguished as of May 1996.  Although we reverse the special referee's finding that Commercial Credit did not exercise due diligence, we affirm the resulting refusal to toll the enforcement period.  Thus, we find that Commercial Credit's judgment lien will expire on February 21, 1999.

**REVERSED IN PART and AFFIRMED IN PART.**

CONNOR and HUFF, JJ., concur.