**HOME PORT RENTALS, INC.**

v.

**INTERNATIONAL YACHTING GROUP INC., et al.**

**No. CIV. A. 99–0464.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

April 27, 2000.

Bobby S. Gilliam, William A. Haynes, Wilkinson Carmody & Gilliam, Shreveport, LA, Kendall M. Squires, Bruce Sherman, San Diego, CA, for Home Port Rentals Inc., plaintiffs.

Pamela G. Nathan, Blanchard Walker et al., Shreveport, LA, for International Yachting Group Inc., Peter Ruben, Denny Allen, Roger Moore, Jim Edwards, defendants.

## JUDGMENT

STAGG, District Judge.

For the reasons assigned in the Report and Recommendation of the Magistrate Judge previously filed herein, and having thoroughly reviewed the record, including the written objections filed, and concurring with the findings of the Magistrate Judge under the applicable law;

IT IS ORDERED that the **Motion to Dismiss (Doc. 12)** is **denied.** The judgment of the United States District Court of South Carolina that was registered in this court in Miscellaneous Action No. 99–08 is declared to be enforceable in the Western District of Louisiana until April 2, 2002.

## REPORT AND RECOMMENDATION

PAYNE, United States Magistrate Judge.

### Introduction

Home Port Rentals, Inc. ("Home Port") filed suit in the United States District Court for South Carolina and obtained a judgment for the principal amount of $1,250,000 against Roger Moore and other defendants. The judgment was entered on March 20, 1989. Three days before the judgment's ten-year anniversary, Home Port commenced this action by filing a "Petition for *Enforcement* of Foreign Judgment." (Doc. 1) The petition recites the existence of the South Carolina judgment and prays that this court enter a like judgment against Moore, a Bossier City resident. Home Port also filed on that same day a "Petition for *Registration* of Foreign Judgment" (Doc. 5), which was originally assigned case number 99 mc 08 but is now consolidated with this action. The registration paperwork was in order, and registration was immediately effected on March 17, 1999 without the need of any action by the court. *See* 28 U.S.C. § 1963.[1]

### The Timeliness Issue Is Presented

Timeliness is an obvious issue. The judgment rendered by the federal court in South Carolina gave rise to a lien on property in that state to the same extent as a judgment rendered by a South Carolina state court "and shall cease to be a lien in the same manner and time." 28 U.S.C. § 1962. South Carolina law provides that judgments may be executed upon "within ten years from the date of the original entry thereof and shall have active energy during such period, without any renewal or renewals thereof ...." S.C.Code Ann. § 15–39–30. South Carolina courts interpret this statute to mean what it says: a judgment is utterly extinguished ten years from the date of entry. There is no procedure for renewal or re-

---

1. The relevant portions of § 1963 provide as follows: "A judgment in an action for the recovery of money or property entered in any ... district court ... may be registered by filing a certified copy of the judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown. ... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." The statute also provides that: "The procedure prescribed under this section is in addition to other procedures provided by law for the enforcement of judgments."

vival. *LaRosa v. Johnston*, 328 S.C. 293, 493 S.E.2d 100 (S.C.App.1997).[2] Accordingly, the judgment became unenforceable in South Carolina after March 20, 1999. As noted above, the judgment was registered in this court pursuant to § 1963 on March 17, 1999, three days before it expired under South Carolina law.

Home Port advised at a status conference that it was relying solely on the § 1963 registration (and not the petition for enforcement) to keep the judgment alive in Louisiana. The parties also agreed to present the timeliness dispute to the court in these proceedings, in effect converting this matter into an action for declaratory judgment on the remaining life of the registered judgment. Moore then filed a Motion to Dismiss (Doc. 12) on the grounds that the judgment has expired and is not enforceable in South Carolina or Louisiana. Home Port responded that: (1) the registration of the judgment in this court before its expiration under South Carolina law added ten years to its life in Louisiana; and (2) South Carolina's ten year limitations period for enforcement of judgments is tolled by Moore's absence from the state during that time. For the reasons that follow, it is recommended that the court reject the arguments of both parties and hold that the judgment is effective in the Western District of Louisiana until April 2, 2002.

**The Effect of § 1963 Registration**

■ Section 1963 provides that the money judgment of the United States District Court of South Carolina, once registered in this district, "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." The jurisprudence is clear that the limitations law of the registration state, not the issuing state, governs enforcement of the judgment in the registration state. The leading case for this rather uncontroversial rule is

*Stanford v. Utley*, 341 F.2d 265 (8th Cir. 1965) (Blackmun, J.). *See also* 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2787, p. 35 (1995). It is often the case that the state that issued the judgment has a shorter limitations period for the enforcement of judgments than a state where the judgment is later registered. In such cases, the judgment may be enforced in the state of registration within the more generous limitations period of the registration state. That, however, leaves the more difficult and controversial issue of when the limitations period *commences* in the registration state: Does it commence from date of issuance or date of registration?

*Stanford* contains language that supports Home Port's proposition that registration under § 1963 creates a "brand new" judgment of the registration court that is entitled to be enforced during the registration state's period of limitations, commencing from registration. In *Stanford* a 1956 Mississippi federal judgment was registered that same year in a Missouri federal court. After Mississippi's seven-year period of limitations expired (in 1963), but *before* Missouri's ten-year period of limitations ran, collection efforts in Missouri sparked litigation on the timeliness issue. With respect to the effect of registration, the *Stanford* court wrote as follows:

> We have concluded that § 1963 is more than 'ministerial' and is more than a mere procedural device for the collection of the foreign judgment. We feel that registration provides, so far as enforcement is concerned, the equivalent of a new judgment of the registration court. In other words, for the present fact situation and for enforcement purposes, the Missouri federal registration equated with a new Missouri federal judgment on the original Mississippi federal

---

**2.** Louisiana provides a similar, but not identical, ten-year period of effectiveness for judgments, but Louisiana permits judgments to be revived as often as the plaintiff may desire. *See* La. Civ.Code art. 3501; La. C.C.P. art. 2031.

judgment, that is, it is no different than a judgment timely obtained by action in Missouri federal court on that Mississippi judgment. It follows from this that the Missouri ten year period of limitations, provided by V.A.M.S. § 516.350, and not the Mississippi seven year period, applies so far as enforcement is concerned, and that execution proceedings by the plaintiff within the Missouri period, and otherwise proper, are not subject to dismissal.

341 F.2d at 268. Despite the apparent breadth of that language, the court later noted that the many questions surrounding the myriad situations in which § 1963 could come into play prompted it to:

> emphasize that the conclusion we reach here is one having application to the fact situation of this case. We do not now go so far as to say that registration effects a new judgment in the registration court for every conceivable purpose; neither do we say that it fails to do so for any particular purpose.

341 F.2d at 271.

Because of the dates involved, the result in *Stanford* did not actually require a holding that the registration effected a "new judgment" that triggered a new limitations period in the registration state that commenced from registration. It was only necessary that the court hold that the registered judgment could be enforced in the state of registration within the registration state's limitations period, commencing from the date the judgment was entered in the issuing state. Accordingly, to the extent that *Stanford* stands for more, it is *dicta.*[3]

■ More importantly, the Fifth Circuit (whose precedents this court must follow) stated in *United States v. Kellum*, 523 F.2d 1284, 1289 (5th Cir.1975) that *Stanford* did not hold "that registration created a brand new judgment, to be enforced as if there had never been a judgment in the case." In addressing the effect of registration, the *Kellum* court wrote: "There was no new judgment as would have been obtained in a plenary action duly filed. Neither did the registration renew or revive the 1964 judgment." *Id.*

*Kellum* also observed that *Stanford* was "correctly analyzed" in *Matanuska Valley Lines, Inc. v. Molitor*, 365 F.2d 358 (9th Cir.1966), which declined to allow registration of an eight year old Alaska judgment (where the statute of limitations was ten years) in Washington (where the statute ran in six years). Under Home Port's "registration equals renewal" theory, the Alaska judgment would, upon registration in Washington, be entitled to six new years of life in Washington commencing from registration. *Matanuska*, approved by the Fifth Circuit, plainly rejected that theory and applied the registration state's limitations period from the date of issuance rather than registration. *See also Powles v. Kandrasiewicz*, 886 F.Supp. 1261, 1266 (W.D.N.C.1995) ("The Court does not agree, however, with the proposition put forth in *Stanford* which would treat the

---

**3.** As noted, the facts in *Stanford* did not require so broad a holding. Another circuit court has, however, actually applied § 1963 in such a manner. *Marx v. Go Publishing Co., Inc.,* 721 F.2d 1272 (9th Cir.1983). *Marx* never cited *Stanford* or its progeny, looking instead to analogous California law that provided that the period of limitations on a registered foreign judgment ran anew from registration. State courts that have interpreted their respective versions of the Uniform Enforcement of Foreign Judgments Act and similar state laws have split on whether the registration state's limitations period runs from the date of registration or rendition. Some of those decisions also hold squarely that the period of limitations applicable to a judgment registered under such statutes runs anew from registration. *See Le Credit Lyonnais v. Nadd,* 741 So.2d 1165, 1171 (Fla.Ct.App. 1999) (collecting cases on each side of the split) and *Commercial Credit Loans, Inc. v. Riddle,* 334 S.C. 176, 512 S.E.2d 123 (S.C.App.1999). It is this court's view that the terms of § 1963, not Louisiana's version of the UEFJA, govern the commencement date of the limitations period on the registered federal judgment, so these state law decisions are inapplicable.

registration as a 'new judgment' and start the running of the statute anew.")

To the extent that *Kellum* does not absolutely bar Home Port's argument in this circuit, it certainly weighs heavily against it. Furthermore, there is no controlling decision that would require the result sought by Home Port, and Home Port has not pointed to any authority from other jurisdictions that would persuade the court to interpret § 1963 in such a fashion.

The undersigned agrees with the interpretation of § 1963, consistent with *Kellum*, set forth by the Supreme Court of Montana in *Robinson v. First Wyoming Bank, N.A.*, 274 Mont. 307, 909 P.2d 689, 692–94 (1995). That case presented a situation where a Wyoming federal judgment was entered in 1987 and then registered in a federal court in Montana in 1989. Montana's limitations period for enforcement of a judgment was six years. When collection efforts began in Montana, more than six years had passed since the original entry of the judgment in Wyoming, but it had been less than six years since the § 1963 registration in Montana. The Supreme Court of Montana noted that *Stanford* could be read to stand for the proposition that § 1963 created a new judgment in Montana that was entitled to be enforced six years from the date of registration. It noted, however, that decisions such as *Kellum* do not support that proposition. The court ultimately concluded that regardless of whether *Stanford* stood for such a proposition, "that interpretation of § 1963 has the deleterious effect of nullifying the limitation period in both the issuing state and the registration state." 909 P.2d at 693. The court, therefore, held that registration is purely a ministerial act, the plain and simple purpose of which is to enforce the original judgment—not to create a new judgment. It distinguished a situation in which a civil action upon a foreign judgment is brought in a different state and results in an actual judgment being issued from the second state. This court agrees with *Robinson*'s view of § 1963.

The language of the statute, which should be the focus of the inquiry, also supports this court's interpretation. Section 1963 states that a registered judgment "shall have the same effect as" a judgment of the court where registered. That language speaks of only one judgment, the original one. It neither states nor implies (although it does not expressly preclude the possibility) that a wholly new judgment is effected upon registration. If Congress had intended that a substantive effect so important as the renewal of a judgment stem from the mere act of registration, it is logical to believe that Congress would have clearly stated that intent rather than express it through language that only marginally permits of such an interpretation.

When the judgment of the South Carolina federal court was registered in this court, the judgment was given the same effect as if it had been a judgment of this court from its inception. That is, for enforcement purposes, it became a judgment of the Western District of Louisiana that was signed on March 16, 1989, entered on March 17, 1989, and with all the other characteristics of the South Carolina judgment. It was *not* given the same effect as a judgment of this court that was entered on the date of registration. The next issue is to determine whether the judgment, now converted by § 1963 to a judgment of this court, has any remaining life.

**Effect of Louisiana Law on Timeliness**

A judgment rendered by this court is a lien on property located in Louisiana to the same extent and under the same conditions as a judgment of a Louisiana court "and shall cease to be a lien in the same manner and time." 28 U.S.C. § 1962. In that respect, Louisiana law provides that: "A money judgment rendered by a trial court of this state is prescribed by the lapse of ten years from its signing if no appeal has been taken, or, if an appeal has been taken, it is prescribed by the lapse of ten years from the time the judgment

becomes final." La. Civ.Code art. 3501. *See also Seymour v. Jones,* 631 So.2d 666, 667 (La.App. 3d Cir.1994), *writ denied,* 637 So.2d 158(La.).

■ The certification of judgment from the clerk of court of the South Carolina federal court shows that the judgment was signed on March 16, 1989, "and that an appeal was taken from this judgment and the judgment was affirmed by mandate of the Court of Appeals issued on April 2, 1992." (Doc. 6) Accordingly, when the judgment is treated as a judgment of this court as required by § 1962, Article 3501 provides that the judgment is not prescribed until ten years after the judgment became final following appeal. The judgment did not become final following appeal until the mandate issued on April 2, 1992. *See* F.R.A.P. 41. Accordingly, the registered judgment has continuing validity in this district until April 2, 2002.

■ Moore argues that Home Port cannot rely upon the above-referenced provision of Article 3501, yet ignore its second paragraph, which provides as follows:

> An action to enforce a money judgment rendered by a court of another state or a possession of the United States, or of a foreign country, is barred by the lapse of ten years from its rendition; but such a judgment is not enforceable in this state if it is prescribed, barred by the statute of limitations, or is otherwise unenforceable under the laws of the jurisdiction in which it was rendered.

Moore argues that this language bars enforcement of the judgment in Louisiana because it is now time-barred in South Carolina. The quoted language might provide. a defense to the enforcement of the judgment in Louisiana if the judgment were rendered by a court addressed in the article, but it was not. The article is limited to judgments rendered by a court of (1) another state, (2) a possession of the United States, or (3) a foreign country. The court has not located, and Moore has not cited, any authority for the proposition that a judgment rendered by a United States district court is equivalent, under Article 3501, to a judgment by a court of a "possession of the United States." The Louisiana legislature knows how to specifically include judgments of courts of the United States when it wishes. Two examples are: (1) La. R.S. 13:4241, *et seq.,* Louisiana's version of the Uniform Enforcement of Foreign Judgments Act, which encompasses judgments of "a court of the United States;" and (2) La. C.C.P. art. 2541, which provides that a party seeking recognition or execution of a judgment of "a court of the United States" may seek enforcement under La. R.S. 13:4241 or file an ordinary proceeding to have the foreign judgment made a judgment of the Louisiana court. The court does not, therefore, read the second paragraph of Article 3501 to apply to the judgment at issue, which is, by effect of § 1963, a judgment of this United States district court.[4] The combined effect of § 1963 and Article 3501 is that the judgment at issue is, with respect to timeliness, on equal footing with a Louisiana state court judgment.

### Tolling under South Carolina Law

Home Port argues that South Carolina's ten year period of limitations was tolled under South Carolina Code § 15–3–30 during Moore's absence from that state. The court need not address that issue.[5] The judgment was registered with this court

---

**4.** In *Juneau v. Couvillion,* 148 F.R.D. 558 n. 1 (W.D.La.1993), Judge Little avoided the issue of "whether Louisiana courts would apply this article [3501] to block enforcement of federal judgments." He decided the case before him by holding that § 1963 may not revive a judgment once it has expired in the state of issuance. Of course, the judgment in this case was registered in Louisiana before its original expiration date, so the principal issue is distinct from that presented in *Juneau.*

**5.** *Commercial Credit Loans, Inc. v. Riddle,* 334 S.C. 176, 512 S.E.2d 123, 127 (S.C.App.1999) addressed an argument that the time for enforcement of a judgment in South Carolina could be tolled.

prior to expiration of the untolled South Carolina limitations period. At that point Louisiana's law of limitations became applicable to these proceedings; the South Carolina limitations period and any tolling thereof became irrelevant to this litigation.

**Summary and Conclusion**

The judgment issued by the United Sates District Court in South Carolina was registered in the Western District of Louisiana pursuant to § 1963 within the time that the judgment was enforceable under South Carolina law. That registration gave the judgment the same effect, for enforcement purposes, as if it had been issued originally by this court. Judgments of this court are, under § 1962, liens on property in this state to the same extent as a judgment of a Louisiana state court and "cease to be a lien in the same manner and time." Louisiana Civil Code article 3501 provides that a money judgment from which an appeal is taken is prescribed by the lapse of ten years from the time the judgment becomes final. The judgment at issue was affirmed on appeal and became final by effect of the mandate of the Court of Appeals issued on April 2, 1992. Accordingly, the judgment registered in this court is not prescribed until April 2, 2002. Judgment to that effect should be entered.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 12)** be denied and that a judgment be entered declaring that the judgment at issue in these proceedings is enforceable in the Western District of Louisiana until April 2, 2002.

*Objections*

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ. Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed.R.Civ.P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. U.S.A.A.*, 79 F.3d 1415 (5th Cir.1996) (en banc).

March 3, 2000.