THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR
 RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2),
 SCACR.
THE STATE OF SOUTH CAROLINA
 In The Court of Appeals

 
 
 
 James M. Gragg, MD, Respondent,
 
 
 

v.

 
 
 
 Edwin O. Byrd, MD, and
 Sheri C. Byrd, MD, Appellants.
 
 
 

Appeal from Spartanburg County
 Gordon G. Cooper, Master-in-Equity 
Unpublished Opinion No. 2012-UP-079
 Heard January 11, 2012  Filed February
 15, 2012
AFFIRMED AS MODIFIED

 
 
 
 Stanley T. Case, of Spartanburg, for
 Appellants.
 C. William Hinnant, Jr., of Spartanburg,
 for Respondent.
 
 
 

PER CURIAM:  Edwin
 O. Byrd, MD, Sheri C. Byrd, MD, and James M. Gragg, MD are former members of
 Woodruff Family Medicine, LLC (the Practice).  The Byrds appeal the master-in-equity's
 amended order granting Dr. Gragg a judgment in equitable accounting of
 $50,772.38.  They claim the master erred in calculating the amount owed between
 the parties.  We affirm as modified.
An
 action for accounting lies in equity and seeks a calculation and judgment of
 the account balances between the parties.  Historic Charleston Holdings, LLC
 v. Mallon, 381 S.C. 417, 427, 673 S.E.2d 448, 453 (2009).  Our review is de
 novo, but we are not required to disregard the master's credibility findings.  Morris
 v. Tidewater Land & Timber, Inc., 388 S.C. 317, 324-25, 696 S.E.2d 599,
 603 (Ct. App. 2010).  
Nearly
 every detail in this case is affected by the fact that, at best, the parties'
 bookkeeping was extremely poor.  At worst, it was fraudulent.[1] 
 In calculating the final net due between the parties, we begin by using the
 "Byrds' revised figures," which are reflected in the 2009 report's
 "revised collections figures" found on page 592 of the record.  We
 also substitute some of those numbers with the findings made below.
1. The Byrds argue the
 master miscalculated Dr. Gragg's portion of the Practice's shared expenses in
 2000 and 2001.  We agree, but our calculations differ from the Byrds'.
In
 using the Byrds' revised figures for the year 2000, the 2009 report found the
 Practice incurred $315,295.19 in shared expenses.  Because no party contests
 that Dr. Gragg owed only 40% of the Practice's shared expenses for that year, Dr.
 Gragg's portion of shared expenses during that period was $126,118.08.  Plugging
 that figure into the 2009 report's revised collection figures for 2000, we find
 the net amount due to Dr. Gragg for that year is $17,303.12.  
As
 for 2001, the 2009 report's calculation of total shared expenses according to
 the Byrd's revised figures equaled $350,991.47.  Dr. Gragg's portion of the
 year's shared expenses is thus $140,396.59.  Plugging that figure into the 2009
 report's revised collection figures for 2001, the net amount due to Dr. Gragg for
 that year is $13,189.79.  
2.  The Byrds maintain
 the master erred in declining to find Dr. Gragg failed to fulfill a $30,000
 obligation imposed by the Practice's operating agreement.  We decline to
 consider the obligation when calculating the proper amount owed between the
 parties because the Byrds have failed to provide an adequate record.
The
 operating agreement is the contract that governs relations among LLC members. 
 S.C. Code Ann. § 33-44-103(a) (2006); S.C. Code Ann. § 33-44-103 cmt. (2006).  If
 a contract's language is unambiguous, the contract's construction is a question
 of law.  ESA Servs., LLC v. S.C. Dep't of Revenue, 392 S.C. 11, 20, 707
 S.E.2d 431, 436 (Ct. App. 2011).  The court must construe the contract's
 language "according to its plain, ordinary, and popular meaning."  Shuler
 v. Tri-County Elec. Co-op, 374 S.C. 516, 523, 649 S.E.2d 98,
 101 (Ct. App. 2007).
Here,
 Dr. Gragg owed an independent $30,000 obligation pursuant to the operating
 agreement.  A comparison of Article XVI and Article XIV in the operating
 agreement indicates Dr. Gragg held 40% "ownership" of the Practice
 but was required to pay ten installments totaling $30,000 to obtain "50%
 ownership" of the Practice's "medical equipment."  However,
 the Byrds failed to present credible evidence of that equipment's liquidation
 value.  This evidence is necessary to
 account for the obligation because the $30,000 obligation was not a typical
 buy-in, i.e. it was incurred to receive equity in specific assets rather than in
 the Practice.  Because
 the Byrds had the duty to provide an adequate record to conduct a full
 accounting, we decline to consider the obligation when making our final
 determination.  See Crestwood Golf Club, Inc. v. Potter, 328 S.C.
 201, 215, 493 S.E.2d 826, 834 (1997) (holding the appellant bears the burden of
 providing a sufficient record).
3. The
 Byrds contend the master erred in finding Dr. Gragg was owed $13,901.32 for the
 assessment of 40% of the interest payments the Practice made on Note 4.  We
 agree.
No
 party contests the master's finding the interest charges were improper.  Allen
 Carter testified the Practice charged Dr. Gragg 40% of the interest payments
 made on Note 4, and no evidence shows otherwise.  Moreover, in calculating the
 total shared expenses in 2002, 2003, and 2004, the Byrds' revised figures in
 the 2009 report did not deduct interest
 charges on Note 4 from the Practice's total shared expenses.  
To
 calculate the total interest improperly charged to the Practice as a business
 expense, we must add the interest payments made on Note 4 during the period in
 question.  In doing so, we use the interest charges on Note 4 reflected by Dr.
 Gragg's figures in the 2009 report.  Dr. Gragg's figures alleged the Practice
 was charged certain interest payments on Note 4$3,447.71 for 2002, $5,901.36
 for 2003, and $4,432.77 for 2004.  The sum of those payments equals
 $13,781.84.  The sum represents the total interest charges paid by the
 Practice.  Thus, we must calculate Dr. Gragg's share of those interest payments,
 and 40% of $13,781.84 equals $5,512.74.  Accordingly, the master should have
 awarded Dr. Gragg $5,512.74 rather than $13,901.32 for interest charges the
 Practice improperly paid as a shared expense. 
4. The
 Byrds maintain the master erred in declining to find Dr. Gragg owed the Byrds
 40% of the Practice's payments on Note 5 after he left the Practice.[2]  However, the Byrds
 failed to present credible evidence establishing the fair value of the
 equipment related to Note 5 and retained by the Practice.  Therefore, we cannot
 accurately determine whether Dr. Gragg owes the Byrds money for payments the
 Practice made on Note 5 after he resigned.  We therefore decline to rule on the
 issue.  See Crestwood Golf Club, 328 S.C. at 215, 493 S.E.2d at
 834 (holding the appellant bears the burden of providing a sufficient record).
5.  The Byrds lastly argue
 the master erred in declining to find Dr. Gragg owed his pro rata share of
 property taxes for the 2004 tax year.  We again decline to grant this award.  
Here,
 the Practice's lease agreement with Bedside Partners required the Practice to
 pay Bedside Partners's property taxes.  However, the Byrds failed to provide
 Bedside Partners's tax return, and we do not find Mr. Carter's testimony that
 Bedside Partners's annual property taxes totaled near $13,000 credible.  The
 Practice's 2004 ledger tellingly indicates the Practice issued an extra $4,000
 check to Bedside Partners on May 24, 2004, and Mr. Carter's testimony suggests
 the check might have paid property taxes, bank charges, or some combination of
 the two.  Thus, the Byrds failed to provide credible evidence establishing the
 amount of taxes paid by the Practice in 2004.
6. Based upon the
 foregoing arguments, the Byrds contend they are entitled to a monetary judgment
 against Dr. Gragg.  Although we disagree, we amend the master's award.  The net
 amount due to Dr. Gragg equals as follows:

 NET
 DUE
 *Substitution
 of our findings is in bold and italics.
 YEAR 1998                                      ($8,053.13)
 YEAR 1999                                      $9,610.05
 YEAR 2000                                      $17,303.12
 YEAR 2001                                      $13,189.79
 YEAR 2002                                      $18,624.73
 YEAR 2003                                      $1,637.04
 YEAR 2004                                      ($9,600.46)
 Note 1                                               ($13,034.47)
 Note 2                                               ($719.82)
 Note 3                                                        -
 Note 4                                               $5,512.74
 Note 5                                                        -
 Buy-In                                                        -
 Property Taxes                                          -
 Unchallenged Cell Phone Award     $6,352.56
 Final Net Due to
 Dr. Gragg            $40,822.15

The
 final net due to Dr. Gragg reflects the final balance of the money owed by the
 Byrds for all of the issues in dispute.  Accordingly, we amend the master's
 order to award Dr. Gragg $40,822.15.
AFFIRMED AS MODIFIED.
FEW, C.J., and
 THOMAS and KONDUROS, JJ., concur. 

[1] For an extended period beginning in 1998, the parties
 recorded services performed by Dr. Gragg as services performed by Dr. Edwin
 Byrd because Dr. Gragg lacked the necessary credentials to bill certain medical
 insurers for those services.  
[2] We
 need not address Dr. Gragg's contention that he is entitled to a further award
 of $12,419.30 for other charges regarding Note 5.  See Commercial
 Credit Loans, Inc. v. Riddle, 334 S.C. 176, 187, 512 S.E.2d 123, 129
 (Ct.App.1999) (declining to address an issue raised by a respondent because the
 respondent failed to cross appeal the issue); Rule 203(c), SCACR (detailing the
 proper procedure for filing a cross appeal).